LEVERING et al., Appellants, v. UNION TRANSPORTATION AND INSURANCE Co., Respondent.

1. *Contracts — Bailments — Carriers — Exceptions to Liabilities — Practice.*— In an action against a carrier, the plaintiff is not bound to show negligence on the part of the carrier, in the first instance; all that is necessary to charge the carrier is to prove the delivery of the goods to him to be carried, and the burden of accounting for them is thrown upon him; and if he wishes to exonerate himself from liability, he must show either a safe delivery of the goods, or prove that the loss occurred by one of the causes excepted in his undertaking.

2. *Contracts — Bailments — Carriers—Exceptions to Liabilities.* — A carrier may stipulate for a limitation of his responsibility, so far as he is an insurer against losses by mistake or accident; but he cannot exempt himself from losses caused by a neglect of that degree of diligence which the law casts upon

him or his character of bailee. The obligation of the carrier does not originate in contract, but is a duty the law imposes upon him in consideration of the nature of his employment; and if he assumes the calling, he has no power over the duties which the law annexes to that calling. It is the duty of a common carrier to receive whatever goods are offered to him for transportation in the usual course of his employment, and he cannot vary his liability by inserting conditions in his acceptance of goods. To have this effect there must be a special contract assented to by the shipper. Public policy and fair dealing, on which the liability of a common carrier is founded, cannot be undermined and frustrated by the design and circumvention of artfully prepared printed receipts thrust upon the public, without the opportunity of fair assent, in the press and hurry of railroad travel.

3. *Contracts — Bailments — Common Carriers — What Care required.* — The ordinary bailee for hire, or private carrier, is liable only for neglect of ordinary care; but the common carrier, although he may by his contract restrict his liability as insurer, is held to that different and higher degree of diligence commensurate with the duties he assumes.

### *Appeal from St. Louis Circuit Court.*

The following instructions, asked for by defendant, were refused, viz:

2. If the jury believe from the evidence that the cotton in controversy was shipped under the bill of lading read in evidence, then the plaintiffs were bound by the conditions expressed in said bill of lading, and cannot recover unless they prove affirmatively, to the satisfaction of the jury, that the loss occurred through the gross negligence of the defendant or its agents.

3. If the jury shall find that the defendant received the cotton in question, to be forwarded by defendant over railroads owned by other parties and companies, and that the plaintiffs knew the manner in which the said cotton was to be forwarded, then the defendant is not liable as an insurer, and can only be held liable for gross negligence.

4. If the jury believe from the evidence that the cotton in question was, while in the possession of the defendant, lost or destroyed by fire, then the plaintiffs are not entitled to recover.

5. If the jury believe from the evidence that the cotton in question was lost by fire, then the defendant is not liable in this suit, unless the plaintiffs have proven to the satisfaction of the jury that the loss was occasioned by the negligence of the defendant.

6. There is no evidence in this case that the cotton in question was lost or destroyed by the negligence or carelessness of the defendant or its agents.

The following instruction was given by the court, of its own motion:

If the cotton in question was lost by fire, while in defendant's possession, on a railroad train, then the defendant is not liable, if the persons in charge of the train took all reasonable care and observed all reasonable precaution in the management and conduct of the train, and if the car in which the cotton was burned was reasonably tight and suitable for the transportation of such freight.

*Hunton, Moss & Sherzer*, for appellants.

I. Though a common carrier, as to certain excepted risks in his bill of lading, may limit his common law liability, he is still held, in respect to those risks, to the exercise of due diligence and care: his contract does not extend to exemption from liability for negligence. In this respect his common law liability still exists. (Swindler v. Hilliard, 2 Rich. 286; Baker v. H. C. Brinson, 9 *id*. 201; Singleton v. Hilliard & Brooks, 1 Strob. 203; Berry *et al*. v. Cooper *et al*., 28 Geo. 543; Graham & Co. v. Davis & Co., 4 Ohio S. R. 378–9; Davidson v. Graham *et al*., 2 Ohio S. R. 131, 141–2; Sto. on Bail. 574, § 571; Ang. on Carr. 166, § 169, n. 3; Dale v. Hall, 1 Wils. 281; 3 Kent's Com. 300, and notes.)

II. The court decided aright on the burden of proof. See case cited. (2 Green. Ev. § 219; Whitesides v. Russell, 8 Watts & Serg. 49; 2 Ohio S. R. 141–2; Slocum v. Fairchild, 7 Hill, N. Y., 296–7.)

III. Plaintiffs' second instruction should have been given — the bill of lading in land transportation being merely a receipt, and not binding as a contract upon plaintiffs unless signed by them or expressly agreed to. (2 Ld. Ray. 912; Bouv. Dict. tit. Bill of Lading; Bryans v. Hix, 4 M. & W. 785–788; Pardington v. South Wales R. R. Co., 1 Hurl. & Nor. 393; Simons v. Gt. West. Railw., 1 Hurl. & Nor. 393; Simons v. Gt. West. Railw., 18 C. B. 805; White v. Gt. West. Railw. Co., 2 C. B., N. S., 7;

Smith's Mer. Law. 376 ; Fish v. Chapman & Ross, 2 Kelley, Geo., 349 ; Chouteaux v. Leech & Co., 18 Penn. 233.)

In any event, it was no express agreement as to its conditions, the common carrier not being able so to limit his common law liability. (Gould v. Hill, 2 Hill, N. Y., 623 ; Cole v. Godwin et al., 19 Wend. 251–262 ; Fish v. Chapman et al., 2 Kelley, Geo., 358.) It is only by express agreement that this liability can be controlled. (Hallister v. Hollen, 19 Wend. 234 ; Cole v. Goodwin et al., 19 Wend. 251 ; Fish v. Chapman et al., 2 Kelley, Geo., 358 ; N. J. Trans. Co. v. The Merchants' Bank, 6 How. 366 ; Gould v. Hill, 2 Hill, N. Y., 623 ; Camden & Amboy Trans. Co. v. Belknap, 21 Wend. 355 ; 3 Hill, 9 – 20 ; 10 Met. 472.)

*Knox, and Smith & Knight,* for respondent.

I. The Union Transportation Company had a right to contract against liabilities occurring from "loss by fire." (Redf. on Rail. § 132 ; Edw. on Bail. 468 and following ; Sto. on Bail. § 554.)

II. The appellants, having alleged in their petition a loss not within any of the excepted perils, were not entitled to a verdict if the jury found the loss to have been occasioned "by fire."

WAGNER, Judge, delivered the opinion of the court.

This suit was brought by plaintiffs to recover the value of twenty-six bales of cotton, which defendant had received to transport from East St. Louis to New York. The cotton was destroyed by fire in the course of its transit, in one of defendant's railway cars. At the time the cotton was delivered to defendant, it gave a receipt for the same, in the nature of a bill of lading, which had stamped across its face the words, "At owners' risk of fire," and also a like reservation in regard to loss by fire inserted in one of the conditions embodied in the instrument.

The plaintiffs claim damages to the amount of the value of the cotton, and allege that the loss was occasioned by the negligence and carelessness of the defendant in failing to furnish suitable cars for its transportation. The jury, acting under instructions of the court, found a verdict for the defendant, on which judg-

ment was rendered. There is nothing in the evidence requiring comment; and if the law was correctly and properly declared, there is nothing to justify an interference. The plaintiffs were not bound to show negligence on the part of the carrier, in the first instance. All that is necessary to charge a carrier is to prove the delivery of the thing to him to be carried, and the burden of accounting for it is thrown upon him; and if he wishes to exonerate himself from liability, he must either show the safe delivery of the goods, or prove that the loss occurred by one of the causes excepted in his undertaking. (Tumey v. Wilson, 7 Yerger, 340; Berry v. Cooper, 28 Geo. 543; Cameron v. Rich, 4 Strob. 168.) It is universally admitted that the carrier is always liable for injuries resulting from his own negligence, which will include defects in the means of transportation provided by him; and his liabilities will extend to agencies which the violence of nature causes in consequence of his negligence or defective means. In general, he has been held to be an insurer of the safety of the goods intrusted to his care, and can only be exempted from perils occasioned by the act of God and the public enemy. For a long time it was denied by most respectable and eminent authorities that a carrier could release himself from the stringent responsibility imposed upon him by the common law, or destroy the character of insurer which he held toward the person employing him either by notice or contract. But the opinion now seems to prevail that he may stipulate for a limitation of his responsibility. (Parsons v. Monteith, 13 Barb. 353; Moore v. Evans, 14 *id.* 524; Dorr v. The New Jersey Steam Nav. Co., 11 N. Y. 486; New Jersey Steam Nav. Co. v. The Merchants' Bank, 6 How. 382; York Company v. Central Railroad, 3 Wallace, 107; Camden v. Beelduff, 16 Penn. St. 67; Davidson v. Graham, 2 Ohio St. 131; Western Transportation Co. v. Newhall, 29 Ill. 466.) But although he may thus restrict his liability, so far as he is an insurer against losses by mistake or accident, he cannot exempt himself from losses caused by a neglect of that degree of negligence which the law casts upon him in his character of bailee.

As the exception is an innovation on the principles of law, and

Levering et al. v. Union Trans. and Ins. Co.

introduced exclusively for the benefit of the carrier, the construction must be made most strongly against him.

In Atwood v. Reliance Transportation Co., 9 Watts, 88, in relation to the restriction in a contract by a carrier, Mr. Chief Justice Gibson said: "Though it is, perhaps, too late to say that a carrier may not accept his charge on special terms, it is not too late to say that the policy which dictated the rule of the common law requires that exceptions to it be strictly interpreted, and that it is his duty to bring his case strictly within them;" and the authorities are all to the same effect. The peculiar duty and high responsibility which has been imposed upon the common carrier arises from the public character of his employment, the extensive control he exercises over the property of others, and the facilities which he usually has for securing impunity for an abuse of his trust. (2 Kent's Com. 597.) It is the imperative duty of a common carrier to receive whatsoever goods are offered to him for transportation in the usual course of his employment, and he takes them with all the responsibilities attached by law to his calling or employment. He cannot vary his liability by inserting conditions in his acceptance of goods; but to have this effect of exonerating him, there must be a special contract assented to by the shipper.

The argument in favor of the right of the carrier to vary his liability, by introducing conditions into his acceptance, is founded on a misconception, in considering that his liability is voluntary and arises *ex contractu*. The law attaches the responsibility to his employment or calling; and if he assumes the calling, he has no power over the duties which the law annexes to that calling. His assuming the character of a common carrier depends entirely on his own will and assent; but if he undertakes that occupation, the liabilities which come upon him, in respect of goods brought home to him to be carried, are imposed by law, and not created by his assent or agreement. The law of common carriers is different from the law applicable to other classes of people. They are recognized by the law as peculiar persons, in respect to whom, in their employment, non-feasance is a misdemeanor; a failure to carry and deliver safely is a *tort*. (Merrit v. Earle, 31 Barb.

7—VOL. LII.

38 ; People v. Willet, 26 *id.* 81 ; Heirn v. McCaughan, 32 Miss. 19 ; Johnson v. Richardson, 17 Ill. 303 ; 1 Sm. Lead. C., note to Coggs v. Bernard.) Public policy and fair dealing, on which the extraordinary liability of a common carrier is founded, cannot be undermined and frustrated by the design and circumvention of artfully prepared printed receipts contrived by scheming corporations and soulless companies, thrust upon the public, without an opportunity of fair assent, in the press and hurry of railroad travel. But in the case presented for consideration we suppose there was a special agreement between the parties ; it was argued on that hypothesis by the counsel on both sides, and seems to stand admitted by the pleadings. It devolved on the defendant to show, notwithstanding the exception exempting it from loss by fire, that the accident did not occur through any fault, want of care, or negligence, on its part or the part of its agents or employees.

The court refused all the instructions asked for by defendant, and instructed the jury, at the request of the plaintiffs, that " if the cotton might have been saved by due and proper care by defendant or its employees, then the defendant is liable for the loss.

" The burden of proof is on the defendant to show that the cotton was not lost by reason of any want of care, skill, and diligence, on the part of defendant or its employees.

" The defendant is liable for any loss occasioned by the negligence of its agents. If the cotton was burned by reason of the insufficiency of the car in which it was transported, in not being close and tight, then the defendant is liable for the loss."

Other instructions were asked by the plaintiffs, which were refused, and in this refusal we see no error, as the above most clearly lay down the law and explain the defendant's liability, throwing the whole onus upon it.

It has often been held that this court will not reverse a judgment when the court below refused to give instructions perfectly unexceptionable, provided the law was clearly and fully given by the court in others. After the giving of the plaintiffs' instructions, the court, of its own motion, gave the following : " If the

cotton in question was lost by fire, while in defendant's possession, on a railroad train, then the defendant is not liable, if the persons in charge of the train took all reasonable care and observed all reasonable precautions in the management and conduct of the train, and if the car in which the cotton was burned was reasonably tight and suitable for the transportation of such freight." This instruction constitutes the chief error complained of by plaintiffs.   We cannot perceive that there is any well-founded objection to it.   Taken in connection with the other instructions, in effect it tells the jury that it was incumbent on the defendant, before it could screen or shield itself from liability, to show that its agents took that precaution and used that diligence which were suitable and appropriate to the business it was pursuing and the responsibility it had incurred, and also that the vehicle it used for the purpose of transportation was good and sufficient.   The ordinary bailee for hire, or private carrier, is liable only for neglect of ordinary care; but the common carrier is held to a different and higher degree of diligence; and the word "reasonable," used in the instruction, is intended to convey the idea that the carrier was bound to use that care and foresight which was appropriate to the occasion and necessary to be used in like exigencies and employments, as contra-distinguished from that ordinary care which devolves upon an ordinary bailee.   A reasonable act is such act as the law requires.   (Warne v. Bickford, 9 Price, 43; Yelv. 44; Platt on Cov. 342, 157.)   In Riley v. Horne, 5 Bing. 220, Chief Justice Best, in discussing this question, says : "When goods are delivered to a carrier, they are usually no longer under the eye of the owner; he seldom follows or sends any servant with them to the place of their destination. If they should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them, or by others in collusion with them, the owner would be unable to prove either of these causes of loss ; his witnesses must be the carrier's servants, and they, knowing that they could not be contradicted, would excuse their masters and themselves.   To give due security to property, the law has added to that responsibility of a carrier which immediately arises out of his contract to carry for a reward—namely,

that of taking all reasonable care of it—the responsibility of an insurer. From his liability as an insurer the carrier is only to be relieved by two things—both so well known to all the country when they happen that no person would be so rash as to attempt to prove that they had happened when they had not—namely, the act of God, and the King's enemies." The taking of reasonable care, and the furnishing of cars reasonably safe and suitable for the business — these seem to be the very things required by law ; and unless the carrier shows satisfactorily that he has come up to these requirements, he will be responsible for loss, without regard to his special contract for exemption. The law, it is believed, was properly declared, and we cannot undertake to weigh the evidence. .

Judgment affirmed. The other judges concur.