Johnson, J.
This cotton was destroyed by fire after the transit was ended, while it lay on pier No. 1, New York city, but before the common-law liability of the carrier was ended by notice to the consignee.
The plaintiff claims to recover for this loss on such liability, under the allegations of his petition.
The defense is founded on these bills of lading, to carry by the usual route, via of the Camden and Amboy Railroad, to Amboy, New Jersey, and thence by boats to pier No. 1, New York, loss or damage by fire, “ at depots or landings at point of delivery, or by fire from any cause whatever,” excepted. The case was tried by a jury at special term.
On the trial the plaintiff took exceptions to certain charges given at the request of defendant, and to specified parts of the general charge, as well as to the admission of certain evidence, and to the refusals to charge as requested by the plaintiff'.
After verdict for defendant the general term affirmed the correctness of the rulings of the court at special term, and. this action is to review the judgment of the general term.
We shall notice but two of the questions made :
1. As to what constitutes an assent to terms and conditions contained in a bill of lading not signed by the shipper.
*430 2. As to the alleged variance between the pleadings and proofs in the case.
■1. Upon the first point, the plaintiff requested the court to charge, that: “ If the plaintiff’ by his agent entered into a verbal agreement with the defendants at Nashville, by which it was agreed that the defendants should carry thirty-nine bales of cotton all-rail from Nashville to New York, and there deliver the same to Murrell & Bowles, and the plaintiff agreed to pay an extra price for such carriage in consideration of greater speed and security, which such carriage all-rail would secure, and said cotton was received by the defendants under such agreement, and nothing was said at the time of such agreement, before they received the cotton, or was known to the plaintiff’ or his agent before that time, as to the exception or restricted liability contained in the bills of lading presented by the defendants, then the plaintiff' is not bound by the said bills of lading unless he agreed to such exceptions and restricted liability after a full knowledge thereof, and before the said cotton had left Nashville and was beyond his control.”
Which charge as asked the court refused to give, and plaintiff excepted, but gave the same with the following qualification : “ But this agreement, if made, must be subject to the usual course of business then known to the parties, as to the delivery of the merchandise before any written contract was made.”
To which charge, with the said qualification as given, plaintiff excepted, and his exception was allowed and recorded.
And the plaintiff further asked the court to charge the jury in writing:
“ That if such a verbal agreement was made by the parties as is stated in the last charge above, and after it was so made and the cotton delivered to the defendants thereunder, the defendants sent the bills of lading to the house of H. S. French, and they were there delivered to the agent of the plaintiff; and - he supposing that they contained the contract made, sent them to New York, and neither he *431 nor the plaintiff knew of the exception from liability contained in the said bills of lading, or assented to them — then the mere receipt of the said bills by the agent who made the contract, and the forwarding the same to New York, can not be considered as an assent to the bills of lading, as the contract under which the goods were carried.”
"Which charge the court refused to give as asked; to which ruling the plaintiff excepted, and his exception was allowed and recorded.
And the court then gave the foregoing charge, with the following qualifications added thereto at the close: “ But the receipt of the bills of lading, and the subsequent transmission of the same by the plaintiff or his agent to New York, may nevertheless be evidence, if the plaintiff' assent thereto.”
To which chai’ge, with the said qualification as given by the court, the plaintiff excepted, and his exception was allowed and recorded.
2. The defendant’s counsel then asked the court to charge the jury : “In ascertaining what contract was made, if the jury shall find that it was the general custom of business at Nashville, to arrange for the carriage of freight, in reference to bills of lading, to be given by the carrier, and received by the shipper, showing the terms of the contract between them; and that in the present case these bills of lading were given, were received by the shipper or his agent without objection or return, and were sent forward by the shipper to his consignee, as the evidence of the shipment, and so acted upon — then, notwithstanding any previous verbal communications between the parties on the subject, such bills of lading constitute the true and only contract between the parties conclusively fixing their respective rights; and that if such are found to be the facts in the present case, the verdict must be for the defendant.”
Which charge the court gave to the jury, and the plaintiff then and there excepted.
In the general charge to the jury upon the same point, is the following: “It is not necessary that the carrier’s *432 liability should be created by a bill of lading; the receipt of the property by him is sufficient evidence, provided it is clearly understood to what place it is to be conveyed, and what are the terms of the contract. But, as we have already said, the fact of such a verbal contract being relied on, may lead you to ask why property of such value, as were these bales of cotton, was intrusted to the defendants to betransported from Tennessee to New York, on so many independent railways, without the usual and customary bill of lading to bind the carrier. If you should be satisfied, however, that such was the contract of the defendants, as claimed by the plaintiff, the defendants must be held responsible until the delivery of the property in New York.
“ The defendants allege that on the same day the property was delivered to them at Nashville, the agent who managed their business prepared bills of lading in the only form used by them, and with which the plaintiff’s agent was well acquainted, and handed them to Reid, the plaintiff’s agent, who alone made the contract for the shipment ; that these bills were on the same day sent by that agent to New York, and were received there by the consignees ; that the consignees received the bales of cotton that were not burned, under these bills of lading, and accounted to the plaintiff'for the proceeds; that they did not know without these bills to whom the cotton was to be delivered, nor was the right of the consignees in New York to receive it communicated to the defendants, the carriers. If these facts have been proved to your satisfaction, you may well infer the assent of the plaintiff to the bills of lading, as containing the terms of the real contract between the parties. As a general rule applying to all agreements, all preliminary conversations, understandings, and stipulations between parties are merged in the written contract, whenever such an instrument is executed and adopted; both parties must be governed by the terms which are embodied in the written agreement, and neither can explain it by parol, unless there is some latent ambiguity which requires explanation. It is the duty of the shipping mer *433 chant, when he receives from the carrier a bill of lading, to-examine it, and if its stipulations are such as he is not willing to adopt, to advise-the carrier at once and forbid the-transportation of his property; if he neglects or omits to do so, but retains the written contract, and, moreover, transmits it to his consignees, thereby vesting, for the purpose of sale, the right of property in the merchandise shipped, we may well apply to him the principle of law which stops a party from denying a fact he has induced the carrier to believe existed, especially if the carrier in good faith has acted or relied, upon it. So you will perceive the whole question as to the assent of the-plaintiff to the bills of lading issued by the defendants, counterparts of which are in evidence, produced by the-plaintiff, depends upon the facts which occurred at the time■ of shipment, the correspondence of the plaintiff with his consignees, and his subsequent admission in the receipts of the-proceeds from the property saved; taking into view, also, the usual mode in which such transactions were conducted, where property, to so large an amount, passed from the owner into the hands of the carrier. If you are satisfied these bills of lading were received and assented to by the-plaintiff which assent may be actual or constructive, you will then ascertain what were their terms, what the exceptions made to the common law liability of the carrier. You will-find the exception that the carrier shall not be held to indemnify the shipper for a loss by fire. If that fact is proved, and the accident is clearly not attributable to the want of the highest degree of care on the part of the carrier, he is excused from liability. As the exception limits the liability of the carrier at common law, it must appear satisfactorily --to you that no prudence was wanting and no care omitted in guarding the cotton from loss, and the burden of proof of this is on the party who seeks to excuse himself. Although the exception is allowed, it is always required that the facts to sustain it should be clearly established.
“ A bill of lading is signed by the carrier only, but when it is delivered to the shipper and he assents to it, it binds *434 both partios: the carrier to deliver safely, and the shipper to pay the freight on the delivery. The whole ease, therefore, it seems to me, resolves itself into two propositions : 1. Is the verbal agreement, said to have been made, proved to have been the only one assented to by the parties? If it is, the plaintiff must recever, for there was no limitation to the defendants’ liability as common carriers. 2. If the real contract, however, was that contained in the bills of lading, and those instruments were received by the plaintiff', retained by him, acted upon by him, remitted to his correspondent in New York, and were regarded by both parties as the terms upon which the shipment was made, and you find the exception as to loss by fire is therein clearly stated (moreover, if such bills of lading were known to and received by plaintiff’s agent, and were such as were always used by the defendants, you may infer that the plaintiff’s assent was given, and if so, he is bound by the terms of his agreements), it will then follow that if it is proved to your satisfaction the fire which occasioned the loss could not have been prevented by the highest degree of care on the part of the carriers, they are excused, and you will find a verdict in their favor.”
"We have stated at length the charges given and refused, because they involve a question of law, as to what constitutes an agreement by the shipper, which will relieve the carrier from his common law liability, where the bill of lading is not signed by both parties.
In the absence of an express assent to these bills of lading as the contract of shipment, one of the issues before the jury was: Was this cotton shipped under the verbal agreement made the day before, or under the bills of lading made out and handed to plaintiff or his agent after delivery of the cotton to the carrier ? This was a question of fact for the jury upon the evidence under proper instructions.
The plaintiff, upon the issue, asked that the jury be charged, that if the cotton was received under the verbal agreement, and nothing was said at the time, or was known to plaintiff or his agent, as to the restricted liability con *435 tained in the bill of lading, he was not bound, unless he agreed to the same after full knowledge thereof and before the cotton was beyond his control.
This was refused, but was given as qualified by adding: u But this agreement, if made, must be subject to the usual course of business then known to the parties, as to the delivery of merchandise before any written contract was made.”
As requested, the charge was pertinent to the issue made, and if correct, should have been given without the qualification annexed. In effect, and as a rule of law, it was, that where there was a previous verbal contract with a common carrier, as to the terms of the carriage under which the goods were delivered, followed by bills of lading with restrictions not embraced in the verbal contract, the plaintiff might rely on his previous contract, unless the contents of the bills were brought to his knowledge, and assented to before the goods had gone beyond his control.
The qualification that such verbal agreement undei which the shipment was made, “must be subject to the usual course of business known to the parties, as to the delivery of merchandise before any written contract was made,” was, in effect, telling the jury that whatever may have been the verbal agreement, yet it must be subject to the usual course of business known to the parties, when bills of lading are made out and delivered after the goods are in transit.
If, therefore, the usual course in such cases, and in the absence of any previous verbal agreement, was to make out and deliver such bills of lading, then the verbal agreement must be subject to this usual course of business if known to the parties.
This usual course of business known to the shipper, may tend to prove assent to the bills of lading, but to make it control the express terms of a previous verbal agreement is erroneous. The very object of making a prior contract may be, and in this instance probably was, to obtain terms different from those usual with the carrier ; and to say that such contract, “ if made, must be subject to the *436 usual course of business known to the parties,” was, in-effect, saying that such contract, if made, must be modified" or varied by the usual terms of such subsequent bills of' lading. Elsewhere the charge of the court recognizes the validity of verbal contracts of this kind, though a doubt' is thrown over the probability that in this instance such a one was made ; but here the power to stipulate verbally for terms different from the usual course of business known to the shipper, is practically denied. Again, the court refused to charge that if the cotton was delivered under a previous verbal agreement, and afterward the bills of-lading-were handed to plaintiff’s agent, who, supposing they were-a receipt for the goods to be carried according to the terms-he had agreed on, sent them to New York without knowing of these restrictions or assenting to them, then the receipt of the bills of lading and transmission of them to-New York can not be considered an assent to them; but did give this charge with the qualification that such receipt and transmission was nevertheless evidence of such assent.Whether it was meant that it was evidence tending to-prove such assent, or sufficient evidence of such assent, is-not quite clear.
When, however, this qualification of the charge is considered in connection with the special charge given at the-request of defendant, it is manifest-the jury understood the court to mean that it was sufficient, if not conclusive evidence-of assent, and abrogated the verbal agreement.
This special charge, given at defendant’s request, was, that if it was the general custom at Nashville to arrange-for the carriage of freight with reference to bills of lading, showing the terms of shipment, and that in the present case if these bills were received without objection or return, and sent forward to the consignee as the evidence of the shipment, and so acted upon, then, notwithstanding any previous verbal communications on the subject, these bills constituted the true and only contract between the parties, “ conclusively fixing their respective rights.” This charge makes certain specified facts conclusive evidence of assent- *437 ■to these special agreements, although there was no knowledge of their contents nor of the usual course of business, nor any express assent. It makes the bills of lading binding agreements, exempting the carrier from common law liability by conclusively presuming that the shipper agreed •to their terms, and denies to him the right to show that the goods were shipped under a previous valid verbal agreement, or that he did not assent to the terms of the bills. .It is predicated on the assumption that silence by the shipper, under the circumstances, amounts to consent, even where there is a previous valid agreement under which the -carrier had obtained possession of the cotton.
The same doctrine is repeated in a different form in the general charge, where it is said, if the shipper neglects to examine the bills when handed to him, but retains and ■transmits them to the consignee, “ we may well apply to him that principle of law which estops a party from denying a fact he has induced the carrier to believe existed, especially- if the carrier, in good faith, has acted or relied -upon it.”
Again, the jury are told the assent may be “ actual or *■constructive.” While the jury are elsewhere in the charge told, that the bills of lading required the plaintiff’s assent, yet. here certain facts are made conclusive as to such assent, irrespective of the actual facts.
It was a question of fact for the jury, and not of law for \the court, whether such assent was given. No estoppel was pleaded or relied on by defendant, nor did the facts -warrant the application here of that doeti’ine. Under ■which contract was the shipment made ? This was a pure question of fact, to be determined by the jury, upon all the facts and circumstances of the case, and not to be pre.sumed contrary to the fact, or against an express verbal agreement, if proved.
It is settled-in Ohio—
1. That a special exception of the liability of a common ■carrier of goods for any loss which may arise from damage -by fire happening without his neglect or fault may be law *438 fully created by special contract between the parties, though it can not be made by general notice known or unknown to the party engaging the services of the common carrier. Davidson v. Graham, 2 Ohio St. 131; Graham & Co. v. Davis & Co., 4 Ohio St. 362; Welsh v. Pittsburgh, Ft. W. & C. R. R., 10 Ohio St. 65; C., H. & D. R. R. Co. v. Pontius et al., 19 Ohio St. 221.
2. That while a common carrier, by special contract with the owner of goods intrusted to him, may so far restrict his common-law liability as to exonerate himself from losses arising from causes over which he had no control,, and to which his own fault or negligence in no way contributed, he can not by such stipulation relieve himself from responsibility for losses caused by his own negligence or want of care or skill, and the burden of proof is upon the carrier to show not only a loss within the terms of the exception, but also that proper care and skill were exercised to prevent it. Graham & Co. v. Davis & Co., 4 Ohio St. 362.
3. A bill of lading signed by the company’s receiving' agent, and accepted and acquiesced in by the consignor, is binding upon the latter, although not signed by him, and the terms and conditions of the contract expressed therein can not be contradicted by parol proof. C., H. & D. R. R. Co. v. Pontius & Richmond, 19 Ohio St. 222.
4. That where a common carrier, who has received and undertaken to carry the goods of another, seeks, in an action against him, to limit his common-law liability as-such, the burden is on him, not only to establish the special agreement limiting such liability, but also to show that the loss falls within the terms of such agreement, and that it. was occasioned without fault or neglect on his part. Graham v. Davis, 4 Ohio St. 362; The Union Express Co., 26 Ohio St.; The United States Express Co. v. Bachman, 28 Ohio St. 144.
Keeping in mind the fact that the plaintiff’s evidence tended to show that he had no knowledge of the contents1 of these bills of lading until after the loss, and never, in *439 fact, assented to the special terms thereof, and that the cotton was shipped under a verbal agreement, made the day previous, and after its delivery to the carrier, these bills were made out and delivered to the consignor, who, without reading, forwarded them to the consignees, who used them to take possession of the cotton not destroyed, the question is fairly presented: Did the court err in its charges and refusal to charge as to the effect of receiving and using these bills in the manner stated ?
The substance of the charge was, that the plaintiff’s action in the premises was conclusive upon him and bound him by these bills, although he had no knowledge of them contents, and never assented to their terms, and although he may have proved his previous verbal agreement.
1. There are numerous decisions bearing on this question and much conflict of authority.
The court below followed the decisions of Massachusetts, New York, and some other states as to the effect of a shipper receiving a bill of lading at the time the goods are delivered, and forwarding it to the consignee without examination or dissent.
In those cases, stress is laid on the fact that the delivery of the goods and the bills of lading were concurrent acts.
In such case it has been held that, in the absence of fraud or imposition, evidence is not admissible to show that the consignor did not read or know their contents, and that such bills conclusively bind the consignor. Grace v. Adams, 100 Mass. 505; Kirkland v. Dinsmore, 62 N. Y. 171, and cases there cited.
If we were to concede the soundness of these decisions, they fail to support the charges in the case at bar.
They were cases where there was no claim of a previous verbal contract under which the carrier took possession of the goods to be carried. ■
They were cases where the delivery of the goods and of the bills of lading were concurrent acts, and not, as here, bills delivered after shipment. These, we think, are material facts affecting the rule.
*440 The clear weight of authority is, that sound principles ■of public policy demand that the common carrier should be held strictly to his common-law liability unless it is limited by express agreement, and that the principles of law which create obligations ex contractu by an implied promise or ■constructive assent have no application to contracts limiting the liability of a common carrier.
These cases generally and properly distinguish between evidence, whether direct or circumstantial, tending to show an express assent of the shipper, and evidence of facts which create an implied or constructive assent or obligation.
In these cases it is conceded that such an agreement need not be in writing, nor even expressed in words, if the facts and circumstances clearly show a meeting of the minds •of the parties on the terms embodied in the bills; while, at the 'same time, it is held that the doctrine of implied obligations does not apply to such agreements, where the acts of the consignor do not work an estoppel in pais against him. As no estoppel is pleaded, and the conceded facts ■of this case fall short of creating one, there remains but one question, namely: What constitutes proof of assent ■to a bill of lading not signed by the shipper ?
The language of the Ohio decisions is, that the carrier may limit his liability by special agreement. This excludes the idea that there may be an implied agreement where there is none expressed. An implied special agreement would be an anomaly in the law.
In Davidson v. Graham, 2 Ohio St. 137, it is said: “In a matter of this nature, we think the assent of the owner or employer is not to be implied, and can not be reasonably presumed from a notice, in the absence of an express agreement.”
In New Jersey v. Merchants’ Bank, 6 How. 344, Nelson, J., says: “ But admitting the right thus to restrict his obligation, it by no means follows that he can do so by his own act. He is in the exercise of a sort of public employment, and has duties to perform, from which he should not be permitted to exonerate himself without the assent of the *441 parties concerned. And this consent is not to be implied or inferred írom a general notice to the public limiting his obligations, which may or may not be assented to.”
In Graham & Co. v. Davis & Co., 4 Ohio St. 376, it is said: “ The implied assent of the owner of the goods to the terms prescribed by the carrier, upon which the English cases are founded, it is very conclusively shown in the American cases, can not be fairly assumed, since the carrier is bound to receive and transport all goods offered for the purpose, subject to all the responsibility incident to the employment, and the owner may quite as fairly be presumed to have intended to insist on the rights he undeniably had, as to have assented to qualifications which the carrier had no right to impose.-”
The court in that case added, that where the owner ■expressly assented to such qualification, it constituted a special agreement relieving the carrier from all losses •except those arising from his fault or negligence.
Without reviewing at large the numerous and somewhat conflicting cases on this point, it is enough to say that the principle adopted in Ohio, and steadily adhered to, that the common-law liability of the carrier can be limited by a special agreement only, is supported both by reason and authority.
That there should be an express assent to limitations of a carrier’s liability is decided in the following cases: Adams Express Co. v. Nock, 2 Duvall, 563; Express Co. v. Moon, 39 Miss. 832; Levering v. Union Trans. Co., 42 Mo. 94; Adams v. Express Co. Haynes, 42 Ill. 93; Adams Express Co. v. Stellaners, 61 Ill. 186; Railroad Co. v. Manufacturing Co., 16 Wall. 329, and numerous other cases.
In the last case cited, it is said, in discussing the effect of presumptions in cases of notice: “ If the parties were on an equality in their dealings with each other, there might be some show of reason for assuming acquiescence from silence, but in the nature of the case this equality does not exist; and, therefore, every intendment should be made in favor of the shipper when he takes a receipt for his *442 property, with restrictive conditions annexed, and says nothing, that he intends to rely upon the law for the security of his rights.
“ It can readily be seen, that if the carrier can reduce his liability in the way proposed, he can transact business on any terms he chooses to prescribe. The shipper, as a general thing, is not in a condition to contend with him as to terms, nor to wait the result of an action at law in case of refusal to carry unconditionally. Indeed, such an action is seldom resorted to, on account of the inability of the shipper to delay sending his goods fox-ward. The law, in conceding to earners the ability to obtain any reasonable-qualification of their responsibility by express contract, has gone as far in this direction as public policy will allow. To relax still further the strict rules of common law applicable to them, by presuming acquiescence in the conditions on which they propose to carry freight, when they have no right to impose them, would, in our opinion, work great harm to the business community.”
These views have a dii-ect beax-ing in the case before us, as the carrier claims exemption from this loss by fire, because the plaintiff' is presumed to have assented to the conditions printed in small type in the body of the bill, and is estopped from denying what he in fact was ignorant of.
These facts are circumstances tending to show assent, especially where the delivery of the goods and the bill of lading ax-e concurrent acts. So whex-e, as hex-e, the question was fairly in issue, between the previous verbal agreement and the bills, the jury must, from all the facts and circumstances, determine whether the vex-bal negotiations of the day before were merged in the subsequent bills of lading by plaintiff’s assent to them, or whethei-, he supposing they were an embodiment ixx writing of the verbal contract, accepted them without examination.
In the absence of proof to the contrary, we apprehend the presumption of law is, that the shipper x-elies on his common law rights, and that that presumption can only be *443 removed by evidence showing that he has assented to limitations of those rights.
This evidence, as in all other cases, may be direct or circumstantial, if it tends to show such assent.
Where no such assent is thus proveo, it can not be presumed or implied from acts of the shipper, which do not amount to an estoppel in pais. These goods had been delivered to the carrier before the bills were handed the shipper. Whatever may be the presumptions that arise where the goods and bills are delivered concurrently, it is clear that none would arise unfavorable to the shipper in the case at bar, especially when he is claiming under a previous verbal agreement, unless he knew of the terms of the bills, and then the inference to be drawn would be affected more or less by other circumstances.
Public policy demands that a common carrier should be held to his common law liability, except when there is a special qualification clearly and fairly made.
It would be dangerous to the public interest to allow the carrier to conclude the shipper, by implication of law, in face of the facts showing he had no knowledge of the terms of the qualification, and never assented to them, by a mere receipt of the bills, after the goods are in transit,, where no objection is made to them, and where they are used merely to obtain possession of the goods not destroyed.
This would create a contract by presumption or operation of law, and not by assent of the parties.
2. At the plaintiff’s request, the court charged the jury: “ That even under the bills of lading produced by defendants, they are liable for a loss by fire, which the highest degree of care on the part of defendants would have prevented at any time before the plaintiff' had notice of its arrival; and until he had a suitable opportunity within the usual business hours for delivering such goods, after they had been placed in readiness for such delivery, to come to the place of delivery, inspect the goods, and take them, away.”
*444 2. “ That it being admitted that the cotton in question was never actually delivered to the consignee, the presumption of law, even if the bills of lading were the contract, is that it was lost by the negligence of the carrier; and unless defendants satisfy the jury that no want of the highest degree of care on their part contributed to such, loss, or would not have prevented it, the plaintiff must recover, provided that the loss happened before notice to the consignees of the arrival, and before they had a suitable opportunity within the usual business hours for delivering such goods, after they had been placed in readiness for such delivery, to come to the place of delivery, inspect the goods, and take them away.”
After giving these charges, the court, at defendants’ request, further gave, upon the same point, the following:
“ One of the issues in this case is in reference to the contract sued upon.
“The plaintiff alleges that on July 22, 1864, the defendant, being a common carrier between Nashville and New York city, agreed with the plaintiff to safely carry thirty-nine bales of cotton, belonging to the plaintiff, from Nashville to New York by an ‘ all-rail ’ route, and there to deliver the same to Murrell & Bowles, within twelve days, for a reward of $17 per bale, afterward increased by consent as to a part of the cotton to $18.25 per bale, and that the cotton was received by the defendant to be carried and delivered in pursuance of that contract.
“ This is denied by the defendant. The defendant, on the ■contrary, asserts that another and different contract was made between the parties, the terms of which are contained in the two bills of lading, copies of which are set forth in the answer.
“ The two contracts thus claimed by the two parties are ■entirely different. That claimed by the plaintiff' required the carriage of the goods by a route of a particular description, and is absolute in its terms as to safe carriage and delivery, admitting of no exceptions except those made by the law. That claimed by the defendant is a special *445 agreement containing numerous conditions and exceptions, qualifying its liability.
“ The law requires that a party shall recover, if at all, according to his allegations and proof, and that he shall not recover for the alleged breach of one contract, upon proof of a substantially different contract.
“ If, therefore, the jury shall find from the evidence that the contract as claimed by the plaintiff was not made, but that.the contract actually made was that as claimed by the defendant, or any other substantially different from that set up by the plaintiff, the verdict must be for the defendant.”
Those given at plaintiff’s request were based on the idea that the bills of lading were in fact the contract of shipment. If they were, still the plaintiff was entitled under this charge to the verdict unless the loss occurred without fault of the carrier.
On the contrary, the jury were next told that the allegations must correspond with the proof that the two contracts were materially different, and if they found the verbal one was not made, or that the bills of lading, or any other contract materially different from that set up by the-plaintiff was the contract, then the plaintiff could not recover.
In short, the plaintiff must fail, if the contract as alleged was not substantially proved, although the loss may have-occurred by the negligence of the carrier.
Irrespective of which of these charges was correct, they are clearly inconsistent and irreconcilable, and therefore calculated to mislead the jury.
The plaintiff alleges that there was error in the charge given at defendant’s request.
He claims that defendant, not contentwith a general or special denial of the allegations of the petition, sought to-avoid liability by averz’ing that the cotton had reached its destination, and was unloaded on the pier, after which it was consumed by fire.
It is conceded there was no such delivery to the con *446 signee, nor notice to him with reasonable time to take charge of it, as will constitute a discharge from common-law liability at the end of transit; but the special exemption from loss by fire, contained in the bills of lading, are set up, together with an averment that after the cotton was unloaded on the pier it was destroyed without fault of the defendant.
The only special feature of the plaintiff’s verbal contract in issue was the all rail clause. The consideration to be paid per bale, and the time in which it was to arrive at its destination, were not in issue; in fact, as to these terms, the bills of lading corresponded with the verbal contract. The loss occurred at the end of the route, after the cotton was unloaded and stored on the pier, but before the carrier’s liability as such had terminated by common law, but after it had terminated if the fire clause in the bills was part of the contract, and the loss happened without fault of the carrier.
This issue was thus narrowed down to the single question : Was the carrier’s liability ended ? And this depended -on whether the defendant’s responsibility for the cotton on the pier was that of a common carrier, or of a simple bailee, under the bills of lading.
As to the transportation of the goods from Nashville to New York, whether under plaintiff’s verbal contract or under the bills of lading, the defendant was still a common carrier, and not at liberty to refuse to perform his duty as such even in regard to this particular transaction. Davidson v. Graham, 2 Ohio St. 141.
The Supreme Court of the United States says:
“We have already remarked the defendants were common carriers. They were not the less such because they had stipulated for a more restricted liability than would have been theirs had their receipt contained only a contract to carry and deliver. What they were is to be determined by the nature of their business, not by the contract they made respecting the li abilities which should attend it. Having taken up the occupation, its fixed legal character could not be thrown off by any declaration or stipulation that they *447 «herald not he considered snch carriers.” Per Strong, Justice, in Prest., Directors & Co. v. Adams Express Co., Sup. Ct. U. S., Oct. Term, 1876.
To constitute this exemption from liability effective, the defendant must avér and prove that the plaintiffs assented to it, and also that the loss fell within its terms and occurred without his fault.
If he failed in either, the common-law liability for this loss occurring after transit had ended, hut before notice to the consignees, remained, and defendant was liable. Upon the issues made on this defense, a large part of the evidence was taken by both parties, and a full trial seems to have been had on it to the jury.
The whole transaction upon all the issues of fact, as well as of law, seems to have been gone into without objection.
The general charge, as well as those given at the plaintiff's request, recognized plaintiff’s right of recovery, even if these bills were the contract, if the loss occurred by the want of care of defendant or his agents.
And yet this conflicting charge, that the plaintiff had no right of recovery, except upon his verbal contract, whatever the defendant’s faults, was also given. It required that all the material provisions of plaintiff’s contract, and not all the provisions essential to a recovery, must be proved, or he could not recover a verdict.
Whether the verdict of the jury was founded on this alleged variance, or upon the answer in evidence, it is impossible now to determine.
The verdict is responsive to all the issues, and may have been founded on either the issue made by the general denial, if it may be termed such, or that made in the answer setting up the new matter by way of avoidance.
Whichever it was, we apprehend it constitutes a complete bar to another action on the hills of lading, as the verdict is a finding for the defendant on that, as well as the other issue in the case.
The goods had reached their destination, and were unloaded on the pier. The real matter was, whether the car *448 rier had exemption from the usual liability of carriers for such a loss at the end of the transit. If the special agreement was binding on the plaintiff, and defendant was in no-fault, he was not liable.
. In such case the failure to prove an all rail contract was not fatal to plaintiff’s right to recover.
Such proof was not essential to his recovery for a loss-after the carriage was ended, but before delivery. If proved, it strengthened his title to a verdict; but, if he-failed, the common-law liability for goods destroyed or lost at the end of the transit, but before notice to the consignee and time to remove them, attached, unless the defendant established his exemption, and showed that the-loss on the pier was without his fault.
In such a case a variance as to other parts of the contract not essential to a recovery, though put in issue, are not necessary to plaintiff’s right of recovery.
It was not essential to prove all the allegations of the-plaintiff’s petition, if enough were proved to constitute a. cause of action. The loss was at the end of the transit, but before delivery. The special terms of the verbal undertaking, as claimed by the plaintiff, related to the route, rate, and time, and did not change the carrier’s liability for such a loss. If the all rail clause had been proved, it would only have established another breach of a common carrier’s, duty. The exemption from this loss, whether the goods were to be carried all rail or part rail and part water, depended on a special agreement qualifying the carrier’s liabilitj'- for such a loss at the point of delivery, and not on the mode or route of transit.
Had the goods been shipped under a contract all rail,. with such a qualification, and the carrier been in no default at the fire, still he would have been liable as an insurer if the terminus of that route would have landed the-goods at a different pier, where no fire occurred, because by the deviation from the all rail route he would become an. insurer over any other route which landed the goods where-they were destroyed.
*449 The case of Davidson v. Graham, 2 Ohio St. 132, is. relied on as an authority to support the charge of the-court.
That was a declaration, under common law pleadings, on an undertaking of defendant, as a common carrier and owner of a steamboat, to transport goods from Zanesvilleto Marietta, on the Muskingum river, and avers a failure to deliver.
The defendant pleaded the general issue.
To support this declaration, a bill of lading was offered byfhe, plaintiff, containing an exemption from “ the dangers-of the river, fire, and unavoidable accidents,” but offered no-evidence to show that the loss of the goods fell within the terms of the special contract. Upon this state of proof the plaintiff was nonsuited. The court, while holding that the burden of proof to show that the loss came within the terms of the special agreement, affirmed the nonsuit was rightly granted.
In that ease the plaintiff’s case was founded on a written contract that did not correspond wfith his declaration, and this written contract had special terms covering the breach alleged, differing from the allegation. So that there was a variance between the contract set out and the one proved, touching the liability; while in this case the plaintiff’s-right of action was founded, not necessarily on the breaches of the special provisions of his verbal agreement, as to-route, rate, or time, but on the common law liability that attached to such undertaking, for a loss at the point of delivery.
Where, as in that case, the action is founded on a written ■contract, there is a distinction, in common law pleadings,, between allegations of matters of essential description and matters of substance. The former must be strictly proved as alleged, while the latter need only be proved substantially. The former was a matter of identity of the contract, essential to the right of action, and the proof must strictly conform to the allegations, but in the latter the substance- *450 •only need be proved. “ It was the legal and not the natural identity which was regarded, consisting of those particulars ■only which are, in their nature, essential to the action.” A variance as to matters of substance was “ a disagreement between the allegation and the proof in some matter, which, in point of law is essential to the charge or claim.” Stephen on Plead. 107, 108; Greenl. Ev., sec. 63.
At common law, where the variance related to the matter of description, or to the substance, it was fatal, except when an amendment was allowed; but under our code no variance is material unless it actually misled the adverse party to his prejudice on the merits, and no allegation is material except it is essential to the claim or defense. Code, secs. 128, 131.
Where a material allegation (Code, sec. 133) is, in its general scope and meaning, unproved, it is not a case of variance, but a failure of proof. There is a distinction between material provisions of the contract and material allegations founded on those provisions. If all the material provisions are set out, and breaches alleged, still only those essential to a recovery need be proved. All others, unless descriptive, are redundant, and need not be proved, although alleged. As a question of pleading, only those provisions necessary to entitle the plaintiff to a verdict are material by section 128 of the code.
In this case, the carrier’s liability on the case, as alleged by the petition, was the same, whatever the mode of transit. By mutual consent all the issues made on the petition, and the new matter set up by way of defense, were fully investigated, at great expense of time and money. The -whole transaction, in all its bearings, was gone into, without objection. Upon the pleadings, and without any proof on this answer of new matter, the plaintiff was prima facie entitled to recover’, as the answer admitted that, as a common cai’rier under the bills of lading, the defendant had received, carried, and unloaded the cotton on the pier, where it was destroyed. The burden was on the defendant to relieve itself from this prima facie case.
*451 The only special provision of plaintiff’s contract, if proved, not substantially admitted, was the all rail clause.
This clause was not essential to a recovery for this loss, for the burden was on the defendant to relieve itself from the common law liability, not necessarily dependent on the route, which attached to its undertaking to carry. In the absence of a variance prejudicial to the defendant, or of a clear failure of proof, this could only be done by showing the plaintiff's assent to these bills of lading, and also that due and proper care was used to prevent the loss.

Judgment reversed and cause remanded.