HARVEY, *Appellant*, v. THE TERRE HAUTE & INDIANAPOLIS RAILROAD COMPANY.

1. **Carrier**: LIMITATION OF LIABILITY BY AGREEMENT. A contract fairly entered into between carrier and shipper specifying a fixed sum as the value of the property and limiting the recovery in case of loss to that sum, is binding on the shipper.

2. **Bailment**: PARTY TO ACTION. One H. being the owner of a trotting horse, delivered him to D. to keep for one year, upon an agreement that D. should have the exclusive management, charge and control over him, with the privilege of trotting him at whatsoever

place or places D. might deem best, D. and H. dividing between them the net profits of racing. H. reserved to himself the right to sell the horse at any time during the year upon making compensation to D. While this arrangement was in force, D. made a contract for the transportation of the horse. *Held*, that D. and not H. was the proper party to sue for a violation of this contract.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Geo. W. Cline* and *Joseph Dickson* for appellant.

A common carrier cannot, by special contract, limit his liability, so as to excuse himself from the consequences of his own negligence. *Railroad Co. v. Lockwood,* 17 Wall. 357; *Laing v. Colder,* 8 Pa. St. 479; *Camden, etc., R. R. Co. v. Baldauf,* 16 Pa. St. 67; *Goldey v. R. R. Co.,* 30 Pa. St. 242; *Powell v. R. R. Co.,* 32 Pa. St. 414; *Pa. R. R. Co. v. Henderson,* 51 Pa. St. 315; *Farnham v. R. R. Co.,* 55 Pa. St. 53; *Empire Transp. Co. v. Wamsutta Oil Co.,* 63 Pa. St. 14; *s. c.,* 3 Am. Rep. 515; *Jones v. Voorhees,* 10 Ohio St. 145; *Davidson v. Graham,* 2 Ohio St. 131; *Wilson v. Hamilton,* 4 Ohio St. 722; *Welsh v. R. R. Co.,* 10 Ohio St. 65; *Cleveland R. R. Co. v. Curran,* 19 Ohio St. 1; *s. c.,* 2 Am. Rep. 362; *Cincinnati, etc., R. R. Co. v. Pontius,* 19 Ohio St. 221; *s. c.,* 2 Am. Rep. 391; *Sager v. Portsmouth,* 31 Me. 228, 238; *School District v. R. R. Co.,* 102 Mass. 556; *s. c.,* 3 Am. Rep. 502; *Indianapolis R. R. Co. v. Allen,* 31 Ind. 394; *Orndorff v. Express Co.,* 3 Bush 194; *Berry v. Cooper,* 28 Ga. 543; *Levering v. Union T. Co., etc.,* 42 Mo. 88; *Kirby v. Express Co.,* 2 Mo. App. 377; *Folletsown v. R. R. Co.,* 55 Me. 462. It is as much against the policy of the law to limit the liability to a part of the loss, as it is to stipulate against the entire loss. *Kirby v. Express Co.,* 2 Mo. App. 369; *Orndorff v. Express Co.,* 3 Bush 194; *Levering v. Union T. Co.,* 42 Mo. 88; *Ketchum v. Express Co.,* 52 Mo. 391. The shipper is not limited to the sum represented as the value at the time of the shipment. *U. S. Ex. Co. v. Bach--*

man, 2 Cin. Sup. Ct. 251; s. c., 28 Ohio St. 144; Nashville R. R. Co. v. Jackson, 6 Heisk. (Tenn.) 271; Mich., etc., R. R. Co. v. Heaton, 37 Ind. 448; s. c., 10 Am. Rep. 89; O. & M. R. R. Co. v. Selby, 47 Ind. 471; s. c., 17 Am. Rep. 719; Hollister v. Nowlen, 19 Wend. 234; Cole v. Goodwin, 19 Wend. 251.

Pattison & Crane for respondent.

As the freight was paid upon the horse at the rate charged for one of the value of $100, the plaintiff, if he can recover at all, can recover only that sum. Batson v. Donovan, 4 B. & Ald. 21. If the horse had any value as a trotting or fancy horse, and that fact was not made known to respondent, it was a fraud, and the plaintiff cannot now avail himself of it. The owner of the horse affixed his value, and is estopped from now denying it. After the differences in freight arising out of values were made known to him, he selected the rate fixed for a horse of the value of $100, which is conclusive against him upon the question of value. The concealment of the value of the horse over and above $100 may have induced less care on the part of defendant than would have been practiced if the value now claimed had been made known, and, therefore, the owner conduced to the loss. Addison on Torts, (Wood's Ed. 1876) § 703, pp. 773, 774; Wolf v. Am. Ex. Co., 43 Mo. 421, 426; Relf v. Rapp, 3 W. & S. 21; Orange Co. Bank v. Brown, 9 Wend. 116; Story on Bailm., (8 Ed.) § 565; Angell on Carriers, (4 Ed.) § 258, 261; Elkins v. Empire Trans. Co., 81 Pa. St. (32 P. F. Smith) 315; Kallman v. U. S. Ex. Co., 3 Kas. 205; Richards v. Westcott, 2 Bosw. 604; 1 Smith Lead. Cas., (pt. 1) 390; Little v. R. R. Co., 66 Me. 239; Phillips v. Earle, 8 Pick. 182; Boscowitz v. Adams Ex. Co., 93 Ill. 523; s. c., 34 Am. Rep. 191; Adams Ex. Co. v. Stettaners, 61 Ill. 187; s. c., 14 Am. Rep. 57; Kember v. Express Co., 22 La. Ann. 158; s. c., 2 Am. Rep. 719; Southern Ex. Co. v. Crook, 64 Ala. 475; s. c., 4 Am.

Rep. 140; *Green v. Express Co.*, 45 Ga. 309; *Everett v. Express Co.*, 46 Ga. 303; *Baldwin v. Steamship Co.*, 74 N. Y. 125; *s. c.*, 30 Am. Rep. 277; 2 Redfield on Railways, (5. Ed.) p. 120, § 179, pt. 5; *Mather v. Express Co.*, 9 Reporter 430; Lawson on Carriers, § 20; *Railroad Co. v. Fraloff*, 100. U. S. 24; *Lewis v. Railway Co.*, L. R., 3 Q. B. Div. 195; 5 Rep. 383; *McCance v. Railway Co.*, 7 H. & N. 477; 31 L. J. Exch. 65; *Hart v. Penna. R. R. Co.*, 7 Fed. Rep. 630.

This being an action upon contract—a contract made by Dickson and with which Harvey had nothing to do— and not an action for a tort, or an action founded upon any common law liability of defendant, Harvey was not the. proper person to sue. Dickson cannot be considered Harvey's agent. (1) An agent must act for, and in accordance· with the wishes of, the principal. This contract gave· Dickson the right to act for himself, and, if he chose, contrary to the wishes and instructions of appellant. (2) The· authority of an agent is revoked by the death of the principal. Appellant's death, however, would not have affected: Dickson's control or possession of the horse. (3) The principal can be held liable on the contracts of the agent. Yet it is plain that had Dickson, after signing the contract, refused to deliver the horse for transportation, or to pay the agreed price therefor, appellant could not have been held, and no action would have lain by respondent against him. Even assuming that Dickson was an agent, yet he had a beneficial interest in the performance of the contract, and a special property in the subject matter of the agreement, and was the party to sue. *Porter v. Raymond*, 53 N. H. 519. Harvey's right of property as well as his right of possession was suspended by the contract. Edwards on Bailm., (2 Ed.) § 369. So that he could not maintain trespass against a third party for injuries to the animal. *Putnam v. Wyley*, 8 Johns. 432; *Swift v. Moseley*, 10 Vt. 208.

Hough, J.—This was an action brought by appellant in the St. Louis circuit court, upon a special contract for·

the transportation of a trotting horse from East St. Louis to Philadelphia. This contract was entered into by and between the respondent, by one Bacon, its station agent, and William T. Dickson, of St. Louis, and contained an agreement on the part of respondent to transport a horse for said Dickson from East St. Louis to Philadelphia, at reduced rates; and an agreement on the part of said Dickson that, in consideration of such reduced rates, he would assume certain risks; it further provided for passing free the person in charge of the horse; that the horse was to be carried at the owner's risk, and his value, if injured or killed, was $100.

The petition alleges that respondent is a corporation organized under the laws of Illinois, but does not allege that it is a common carrier, nor what business it was organized to carry on, nor what it was carrying on at the date of the contract. It also alleges that the horse was a " trotting horse, worth $10,000;" that he belonged to plaintiff, and that William T. Dickson, who executed the contract, was his agent; that the horse was placed by respondent in a defective and unsound car, and that respondent's agents and servants were careless and negligent in the management of the road and trains, and that by reason thereof the horse was injured, to plaintiff's damage in the sum of $11,000

The answer puts in issue the ownership of the horse and its value; admits the execution of the contract, but alleges that it was made with Dickson, who represented that the horse belonged to him, and that he was acting for himself, and denies the other allegations of the petition. As an affirmative defense it sets forth the following facts: that respondent had certain regular rates for transportation of horses of ordinary value, and that for horses of greater value five per cent on the owner's valuation was charged, in addition; that when this horse was offered for transportation, the agent of respondent asked his value, and was told that it was $100; that thereupon Dickson and the

agent of respondent agreed upon that as the valuation, and a contract was drawn up and signed by both parties, which contained among its provisions the words : "Owner's risk —value, if injured or killed, $100 ;" and that respondent, if liable at all, was liable only for $100

The new matter in the answer was put in issue by the reply.

The evidence of plaintiff tended to show that he was the owner of the horse ; that he was worth, at the time of shipment, $8,000 to $12,000 ; that his value consisted in his record made at races ; that he was injured during his transit to Philadelphia so as to make him worthless as a race horse, and not worth more than $60 to $100 for any purpose. The value put upon him was designated in the testimony of one of plaintiff's witnesses as a " fancy value." Dickson testified that he executed the contract sued on, but that he did it as the agent of appellant ; that his agency arose out of a contract between him and appellant, which is as follows :

" This agreement, made and entered into this 17th day of November, 1874, by and between George Harvey, of Bunker Hill, state of Illinois, party of the first part, and William T. Dickson, of St. Louis, State of Missouri, party of the second part ; Witnesseth : That whereas, the said Harvey is owner of a bay trotting gelding, by the name of ' Nino,' and is desirous of placing him under the care, control and management of said Dickson for one year, to be kept and trained by him for that time, with the privilege of entering and trotting said horse in any place said Dickson may think best during that period ; it is mutually agreed and understood by and between the parties as follows, to-wit :   That said Dickson shall take and keep possession of said horse from this date, for the full term of one year; that during said time he shall have exclusive management, charge and control over him, with the privilege of trotting him at whatsoever place or places he may deem best or decide upon, free from any interference by

the said Harvey; that he shall, during that time, keep a just and true account of all expenses of whatever kind incurred and paid by him for the care, attendance and keeping of said horse, entrance fees, traveling expenses, including the board and traveling expenses of said Dickson, when he shall go with said horse, etc.; also, all moneys received on account of races run by said horse during that time, or moneys received on his account from any source; that after deducting all the expenses aforesaid, the balance shall be equally divided between the parties hereto, and the amount found due and owing to said Harvey shall be paid to him at the expiration of said term, and the said horse returned, unless otherwise agreed between them.   It is further agreed between the parties, that said Harvey shall have the privilege of selling said horse at any time he may see fit; but, in such case, two disinterested parties are to be chosen by said Dickson and said Harvey, and in case these arbitrators fail to agree, they shall choose a third party, and they shall agree also as to the amount of damages done said Dickson by reason of said horse being sold, and said Harvey shall pay said Dickson said amount agreed upon by said arbitrators."

Testimony was offered by the plaintiff for the purpose of showing negligence on the part of the servants of the defendant in the management of the train, resulting in injury to the horse.   Respondent introduced testimony tending to disprove negligence on its part, and tending to show that all possible care and diligence were exercised by respondent's agents in the transportation of the horse.   It also introduced testimony tending to prove all the allegations of its answer constituting an affirmative defense.

The following instructions, asked by defendant, as to the measure of damages, were refused by the court:

2.   The jury are instructed, that if they believe that defendant's regular rates of transportation for horses from East St. Louis to Philadelphia, Pennsylvania, were $1.64 per 100 pounds for horses of the value of $100, and that

for horses of greater value the defendant's rate was five per cent on the owner's valuation, in addition to said $1.64 per 100 pounds; that defendant's agent made known these terms to Dickson at the time he offered said horse for transportation; that the horse at that time belonged to plaintiff; that when said Dickson was informed of said rates, he told the agent of defendant that said horse was worth $100, and that, on the basis of such valuation, the agent of the defendant agreed to transport said horse to Philadelphia for the sum of $1.64 for each 100 pounds of his weight, or the total sum of $32.80; that on the margin of the written contract for such transportation entered into between defendant and said Dickson, the value of said horse was stated to be $100; then if the jury find that defendant is liable to plaintiff at all in this suit, they will assess his damage at a sum not exceeding $100 and interest from date of suit at six per cent per annum.

3. The jury are instructed that if Dickson intentionally misrepresented the value of said horse, and stated his value as being much lower than it actually was, for the purpose of procuring him to be transported at a lower rate than he would otherwise have been carried for, the plaintiff is entitled to recover only the value fixed by Dickson.

The jury rendered a verdict in favor of plaintiff for $4,165, upon which the circuit court rendered judgment, and defendant took the case by appeal to the St. Louis court of appeals. That court reversed the judgment of the circuit court, and plaintiff brings the case here by appeal.

We are all of opinion that instructions numbered two and three, asked by the defendant, and refused by the court, should have been given, conceding the right of the plaintiff to maintain an action on the contract. This court has repeatedly held that public policy will not permit a common carrier to contract for exemption from liability on account of the negligence of itself or its servants. The

plaintiff contends that it is as much against the policy of the law to permit the carrier to limit its liability to a part of the loss, as it would be to permit it to stipulate against the entire loss.   We do not regard a contract limiting a right of recovery to a sum expressly agreed upon by the parties as representing the true value of the property shipped, as a contract, in any degree exempting the carrier from the consequences of its own negligence.   Such a contract fairly entered into leaves the carrier responsible for its negligence, and simply fixes the rate of freight and liquidates the damages.   This we think it is competent for the carrier to do.   And where the reduced value is voluntarily fixed by the shipper, with a view of obtaining a low rate of freight, without any knowledge on the part of the carrier that the property was of greater value, it would be a fraud upon the carrier to permit the shipper to recover a greater sum than fixed by him.   *Hart v. Penn. R. R. Co.*, 7 Fed. Rep. 630; Lawson or Carriers, § 20.

A majority of the judges are of opinion that plaintiff has no right of action upon the contract sued on; that by the terms of the contract between Dickson and the plaintiff Harvey, Dickson had the exclusive right of possession of the horse injured, and held such possession for himself and not as agent for the plaintiff; and the contract for transportation made by Dickson with the defendant cannot be adopted by the plaintiff and sued on by him, as a contract made by him, or for him, through Dickson as his agent. Judge NORTON entertains a different view of the effect of this contract.   The judgment of the court of appeals reversing the judgment of the circuit court, will, for the reasons given, be affirmed.