DAVID KELLERMAN & SON, Respondents, v. KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, Appellant.

## Kansas City Court of Appeals, November 20, 1894.*

1. **Contracts:** BLANK FORM: CLAUSE STRICKEN OUT. On an examination of the original contract between the parties hereto the court finds that a certain clause in the blank printed form was stricken out in filling up the contract.

2. **Common Carriers:** EVIDENCE: AGREED STATEMENT: CONTRACT. An agreed statement, together with the contract of shipment between the parties to this action, is examined by the court and it is *held* that the admission of evidence as to the great heat at the time of shipment and the value of the animal shipped was proper, as it did not conflict with the agreed statement of facts or the contract.

3. ———: CONTRACT: CONSTRUCTION: VALUE OF STOCK. A shipping contract of live stock provided that the value of each animal did not exceed $50. *Held,* as there was no fraud in securing the contract, that neither the carrier nor the shipper was precluded from showing the real value of the animal lost.

4. **Appellate and Trial Practice:** AGREED STATEMENT: INSTRUCTIONS. An agreed statement of facts stands in lieu of a special verdict and no instructions are necessary, but where the agreed statement is supplemented by evidence and the cause is submitted to the court without a jury and without instructions, the finding of the court is incontrovertible, if there is any evidence to sustain it, and will be so considered on appeal.

5. **Common Carriers:** CONTRACT: CONSTRUCTION: VALUE OF STOCK. GILL, J., concurring in a separate opinion, *holds:* If the shipper secures a reduced rate by falsely stating the value of the animal, he would then be estopped to claim a greater sum; but in this case there was no such misrepresentation and no rate fixed.

6. ———: LIMITING LIABILITY: COMMON LAW: CONSTRUCTION. If a common carrier would shield himself under special contracts intended as a means of escape from his well known liability for negligence, he must see that such exemptions are made in clear and unambiguous terms, as such exemptions, being an innovation on the common law and for the benefit of the carrier, must be construed most strongly against him.

*This case reached the reporter January 26, 1897. The supreme court affirmed the case in 34 S. W. Rep. 41, and 37 S. W. Rep. 828.

7. ———: ———: CONSTRUCTION: VALUE OF ANIMAL. ELLISON, J., dissenting in a separate opinion, *holds:* The stipulation taken in connection with another stipulation of the contract providing for an addition of twenty-five per cent to the freight for each one hundred per cent of the value of the animal, estops the shipper to recover more than the stipulated value of the animal.

### ON MOTION FOR REHEARING.

8. ———: ———: ———: CONSIDERATION. In a shipping contract the consideration clause read: "In consideration of tariff dollars per car," etc. *Held,* this meant the tariff arranged by the railroad commission according to law and was not a reduced rate such as is necessary to furnish the consideration for limiting the liability of the carrier.

9. **Definitions:** TARIFF. The tariff rate is a duty imposed according to a schedule of charges generally.

*Appeal from the Nodaway Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED AND CERTIFIED TO THE SUPREME COURT.

*W. W. Ramsay* and *Spencer & Mosman* for appellant.

(1) It is thus seen that plaintiffs do not claim, *first,* that the contract was not fairly entered into; or, *second,* that plaintiffs' agent was in ignorance of its terms; or, *third,* misapprehended them; or, *fourth,* that he did not read the contract. No mistake, imposition, deception, misrepresentation, fraud, unfairness, or oppression is charged, and plaintiffs admit that they signed the contract. Under such circumstances, the law will hold that plaintiffs are bound by the contract voluntarily entered into, and will not permit them to recover more than the agreed valuation. *Gwin v. Waggoner,* 98 Mo. 315; *O'Brien v. Kinney,* 74 Mo. 137; *Railroad v. Cleary,* 77 Mo. 634; *Campbell v. Van Houten,* 44 Mo. App. 238; *Snider v. Express Co.,* 63 Mo. 376; *Brown v. Railroad,* 18 Mo. App. 573; *Rothschild v.*

*Frensdorf*, 21 Mo. App. 321. (2) None of the essential elements of a contract are lacking in the case at bar, and none of plaintiffs' reasons for avoiding the contract affect any one of the essential elements of the contract. See 1 Parsons on Contracts [5 Ed.], p. 8; *Murphy v. Murphy*, 22 Mo. App. 20, 21; *Berner v. Bagnell*, 20 Mo. App. 544; *O'Brien v. Kinney*, *supra*, and cases cited. (3) The cases hold that in the absence of fraud or mistake the terms of a contract duly executed by the party, will be enforced even where they omit a material portion of the agreement actually entered into, and agreed upon, in the preliminary consultation between the parties. *Morgan v. Porter*, 103 Mo. 135; *Christman v. Hodges*, 75 Mo. 413; *Snider v. Express Co.*, *supra*. (4) Where parties have agreed on the facts, they will not be permitted to introduce evidence in contradiction of their solemn admission. *Brown v. Railroad*, 18 Mo. App. 568. (5) Contracts identical in every particular with the one at bar were sustained in *Harvey v. Railroad*, 74 Mo. 538; *Hart v. Railroad*, 112 U. S. 331. In England the consignor is bound by his declared valuation, and will not be permitted subsequently to show that the value of the goods exceeded the declared value. *McCauce v. Railroad*, 34 L. J. Exch. 39; s. c., 3 H. & C. 343; Redman's Law of Railway Carriers [2 Ed.], p. 51; *Edwards v. Sharatt*, 1 East. 604; *Batson v. Donovan*, 4 Barn & Ald. 2; *Tichburne v. White*, 1 Strange, 145; *Keeney v. Eggleston*, — Aleyn, 93; *Tyly v. Morrice*, — Carth. 485; *Harris v. Packwood*, 3 Taunt. 264. (6) As the contract shows they voluntarily chose the lower rate and are therefore bound by the lower valuation. Having accepted the benefits they must bear the burden of the contract. *Tureman v. Stephens*, 83 Mo. 218. (7) Defendant's objection to the evidence of witness Bellows should have been sustained. *Lumber Co. v. Warner*, 93 Mo. 274;

*Tracy v. Iron Works*, 104 Mo. 198. (8) The end doors of the car were left open, and this, together with the openings between the slats of the stock car, was amply sufficient for its ventilation. *Witting v. Railroad*, 101 Mo. 640; *Hussey v. Saragossa*, 3 Woods. 380. "Without the aid of sheer conjecture or some presumption of law or facts beyond what the facts proved rationally imported, it is not easy to see how the jury could infer that defendant had been guilty of negligence." *Smith v. Railroad*, 37 Mo. 295; *Fitterling v. Railroad*, 79 Mo. 504–509; *Moore v. Railroad*, 28 Mo. App. 622. (9) There was no certain, precise value fixed in any of the following cases. In each the provision was that the carrier should not be liable beyond a certain sum, yet the court upheld the agreement just as though the actual value had been stated, instead of a maximum sum which should not be exceeded. *Hart v. Railroad*, 112 U. S. 331; *Crow v. Alton Co.*, 57 Mo. App. 140; *Duvenich v. Railroad*, 57 Mo. App. 554; *Alair v. Railroad*, 10 N. W. Rep. 1072; *Squires v. Railroad*, 98 Mass. 239; *Railroad v. Lowell*, 90 Tenn. 17; s. c., 15 S. W. Rep. 837; *Railroad v. Harwell*, 8 S. Rep. 649; *Zouch v. Railroad*, 15 S. E. Rep. 185; *Johnstone v. Railroad*, 17 S. E. Rep. 512; *Hill v. Railroad*, 144 Mass. 284; s. c., 10 N. E. Rep. 836; *Duntley v. Railroad*, 20 Atl. Rep. 327. The wording of the contracts in the last two cases was identical with that in the case at bar.

*E. A. Vinsonhaler* for respondent.

(1) There was no fraud or misrepresentation in the making of the contract. We contend that the tariff rate is not a reduced rate, but on the contrary it is the usual rate charged all shippers. In the case of *McFadden v. Railroad*, 92 Mo. 343–354, plaintiff was permitted to contradict the statement in the contract

that the rate was a reduced rate and to prove that the rate was the usual rate charged all shippers.  Not only must the rate be reduced in consideration of reduced valuation, but the value must be fixed, so that, in case of liability on the part of the carrier, the damages are liquidated.  Here there was a general limitation on value only—and in case of loss the shipper would still have to prove value.  *Doan v. Railroad*, 38 Mo. App. 408.  This same distinction is made in the following cases:  *Conover v. Express Co.*, 40 Mo. App. 31-35; *Rogan v. Railroad*, 51 Mo. App. 665 at bottom page 673; *Eells v. Railroad*, 52 Fed. Rep. 903.  The question objected to was this, "I'll ask you who prepared this contract?"  (2)  We had a right to show that we made no false statements as to value and in so far as the evidence might show that no reduced rate was agreed upon it was admissible under the authority of *McFadden v. Railroad*, 92 Mo. 343, at page 351.  If the evidence had any tendency to extend, limit, or vary the contract, it was only as to reduced rate and this was permissible.  The evidence showed that they smothered our bull; and that we could not prevent it.  It is not only a case of negligence but one of reckless indifference and gross negligence.  As no instructions were asked, and the evidence was only in part in the agreed statement of facts, it appears to me that this case falls within the rule stated in *Ford v. City of Cameron*, 19 Mo. App. 467; *Schlicker v. Gordon*, 19 Mo. App. 479.  (3)  The contract would not relieve the defendant from liability for its negligence.  *Sturgeon v. Railroad*, 65 Mo. 569.  In above case the animals were suffocated.  *McFadden v. Railroad*, 92 Mo. 343–348; *Witting v. Railroad*, 101 Mo. 631–641.  The evidence was enough to show negligence.  *Ball v. Railroad*, 83 Mo. 574; *Witting v. Railroad*, *supra*; *Alabama G. S. R. Co. v. Thomas*, 3 S. Rep. 802; *Railroad v. Chapman*, N. E.

Rep. 417. (4) These contracts being in derogation of the common law should be strictly construed. Bishop on Contract, secs. 410–411.

SMITH, P. J.—The plaintiffs' petition alleged *inter alia* that defendant corporation, a common carrier, received from plaintiffs on board of its cars a thoroughbred Shorthorn bull of the value of $250, which defendant agreed, in consideration of the regular tariff rate per car to be paid, to transport from Maryville to St. Joseph; that defendant never carried the bull to the place of destination, nor was said bull ever delivered to plaintiffs, but had been wholly lost to plaintiffs through the negligence of defendant.

Defendant answered denying that it had neglected to perform its duty as a common carrier in the transportation of the bull, and alleged that while transporting said bull with due care said bull died in its car while in transit, and for that reason was not delivered at the place of destination. The answer further alleged that the bull was shipped under a special contract whereby it was expressly agreed that the value of the bull should not exceed the value of $50, and that in case of loss, whether resulting from accident or negligence of defendant, the defendant did not assume a liability to exceed the valuation of $50, etc.

In the replication plaintiffs admitted that their agent signed a contract for shipment prepared by the agent of defendant, but plaintiffs state that such contract was prepared without any suggestion, statement or word from plaintiffs or their agents as to the value of said bull. That defendant did not inquire as to value nor did plaintiffs fix it. That no agreement was made as to the rate based upon reduction. That the rate of freight was not fixed, but same was to be settled at destination.

The following stipulation was entered into by the parties: It is agreed by and between the parties to this suit, that the following facts may be considered as admitted by both parties at the trial of this case. *First.* That on the twentieth day of July, 1892, the defendant, at its station at Maryville, Missouri, received of plaintiffs one thoroughbred bull, to be transported by the defendant over its railroad from Maryville to Kansas City, Missouri, as a common carrier. *Second.* That said animal was tied in the end of the car, with the end and the side doors of the car left open for ventilation, the day being extremely warm. *Third.* That such shipment was made by Frank Bellows & Son for the plaintiffs, under a contract of shipment then executed and signed by the parties, and which is hereto attached and made part hereof. *Fourth.* That after said bull was loaded the agents of the defendant in charge of said train, against the judgment and request of said Bellows & Son, closed the side doors and sealed them, the end doors remaining open. That when the car containing the bull reached St. Joseph, Missouri, the bull was found dead, and was there unloaded and not delivered at Kansas City, Missouri. *Fifth.* That said bull was in good condition, as far as known, at the time of shipment, and no cause is known for its death, except the heat. *Sixth.* Parties may introduce evidence not in conflict with the foregoing.

Among the provisions contained in said freight contract and pleaded in the answer were these: That for and in consideration of tariff dollars per car, the said railroad company agrees to transport one car from Maryville to Kansas City, to be loaded with one bull, and in consideration thereof, the said first party agrees to deliver said property for shipment upon the above terms, it being hereby expressly agreed that the value of said live stock does not exceed the following valua-

tion: Each ox or bull, $50; each cow, $30; each calf, $10; each pig, $10; each sheep or goat, $3. And that the above rate of transportation is based upon the agreement that in case of loss or damage, whether resulting from accident or the negligence of said railroad company or its servants, said railroad company does not assume a liability for such loss or damage to exceed the said valuation for each animal. An addition of twenty-five per cent will be made to the rate for each one hundred per cent or fraction thereof, declared by the shipper to be the valuation of his live stock, above the valuation set forth above. And in no event shall the company be liable for loss of, or damage to, said live stock to an amount exceeding such declared valuation.

The defendant has printed in its abstract a further clause alleged to be contained in the bill of lading which provides that defendant shall be exempt from responsibility for the safety of stock in charge of shipper or his agents or servants whether from heat, etc. The plaintiffs insist that this clause was stricken from the bill of lading before it was signed. By agreement of the parties the original contract is submitted to us for the purpose of enabling us to determine this matter of difference between them. We have all carefully examined the bill of lading and have come to the conclusion that the marks thereon suffi-

CONTRACTS: blank form: clause stricken out.

ciently indicate and show that it was the intention of the person who filled up the blanks therein to strike therefrom the clause in question. We must presume that the trial court did not consider this clause.

At the trial the plaintiffs were permitted to prove that their agent who shipped the bull objected to the servants of the defendant closing and sealing the car doors on account of the heat. That the day the bull

was shipped was an extremely warm one, and that fears were entertained that the bull would smother unless the doors were left open. The plaintiffs were permitted, over the objections of defendant, to show that at the time of signing the bill of lading for the shipment of the bull, not a word was said about the value of the bull or the rate of freight to be paid. There was evidence that the bull was worth $225 at the time of the shipment.

The cause was submitted to the court without instructions and without the intervention of a jury. The judgment was for $225.

The defendant filed a motion for a new trial on the grounds, *first*, that the court admitted incompetent evidence in violation of the agreed statement of facts; *second*, that the finding should have been for defendant, and, *third*, that the damages should not have exceeded $50. This motion having been overruled the defendant took an appeal here.

The first ground upon which the defendant demands a reversal of the judgment is, that the trial court permitted the plaintiffs to introduce evidence in violation of the provisions of the stipulation. We have seen that by the terms of its provisions that the right was therein expressly reserved to each party to introduce evidence not in conflict with the facts therein admitted. The question then arises, was the evidence introduced by the plaintiffs in conflict with, or did it tend to disprove, the admitted facts? If so, which of them? The evidence which tended to prove that the day on which the bull was shipped was an extremely hot one and that the defendant's servants, against the objections of plaintiffs' agent, closed and sealed the doors of the car in which the bull was shipped, is entirely consistent with the fact admitted by the

COMMON carriers: evidence: agreed statement: contract.

fourth paragraph of the stipulation. Nor is there anything in the stipulation which would preclude the plaintiffs from proving the value of the bull at the time of the shipment, unless it was the clause in the bill of lading by which it was agreed that "said bull did not exceed the valuation of $50," and that "in case of loss or damage, whether resulting from accident or negligence  *  *  *  said company does not assume a liability for such loss or damage to exceed the said valuation for each animal."

Now the bill of lading under the pleadings and stipulation was admissible in evidence, but as to what legal effect was to be given to any one or all of its provisions was for the court to determine. If the clause of the bill of lading under consideration can be construed into a contract by which the value of the bull was agreed upon so that in case of loss the damages became liquidated by the contract of the parties, then it must be conceded that the admission of the parol evidence as to the value of the bull was improper. But if the clause contains simply a general limitation of value, then it was inoperative in reducing the damages the plaintiff was entitled to recover as a result of defendant's negligence, in which case the plaintiffs' said evidence was properly admitted.

In this case there is no contention that the plaintiffs or their agents fraudulently concealed or falsely represented the real value of the bull. The bull was delivered, it seems, without any inquiry or suggestion as to value. Nor does it appear that the defendant was in any way deceived or misled as to the value of the bull. The said clause of the bill of lading was not inserted in it in consequence of any such representation or in pursuance of any agreement as to value. On the contrary, the bill of lading was a printed form then in use by defendant which was filled up by defendant's

agent and signed by him and plaintiffs' agent without any inquiry or suggestion as to the value of the bull. The rate of freight was not mentioned but was left to be settled at the place of destination.

The case in this respect is very similar to *McFadden v. Railroad*, 92 Mo. 343, and *Doan v. Railroad*, 38 Mo. 408, and its decision must be controlled by the rules there announced. The language of the clause in the bill of lading does not import a special agreement between the plaintiffs and defendant that the bull received for shipment should be regarded as of the value of $50 in case of loss. But on the contrary it will be perceived that it very clearly authorizes the defendant in case of loss to prove the bull of *less value* than $50, and this too without violating the terms of the stipulation in relation to the facts admitted. It is thus seen that the damages which the plaintiff might be entitled to recover for the loss of the bull by the negligence of the defendant, were not under the said clause in the bill of lading liquidated or fixed therein at any amount whatever. The only effect of the clause was to operate as a limitation on the amount of the plaintiffs' damages.

Since the law may now be regarded as settled in this state that a common carrier can not limit his liability in amount when loss is due to his own negligence (*McFadden v. Railroad, supra; Doan v. Railroad, supra; Nickel v. Railroad*, 35 Mo. App. 86; *Kirby v. Express Co.*, 2 Mo. App. 377; *Harvey v. Railroad*, 6 Mo. App. 585; *Rogan v. Railroad*, 51 Mo. App. 665), it is quite obvious that the clause of the bill of lading pleaded in this case being a mere restriction or limitation on the amount of damages which plaintiffs were entitled to recover for the loss of the bull, if through defendant's negligence, was inoperative to preclude a recovery of the actual value of the bull, though in excess of $50.

———: contract:
construction:
value of stock.

Under this clause it was competent for the plaintiffs and defendant to respectively show that the value of the bull was either less or greater than $50, or in other words the actual value.

It follows from this that the admission by the trial court of the evidence as to the actual value of the bull was not improper under the bill of lading, and, therefore, not inconsistent with the agreed state of facts. And for like reasons the trial court was not restricted in assessing the plaintiffs' damages to the sum of $50 since the damages, as we have seen, were not liquidated or fixed by the agreement of the parties in the bill of lading in the event of loss by the negligence of defendant, so the second ground of the appeal must be ruled against the defendant.

As has been already stated, this cause was submitted to the court without the intervention of a jury. In cases where the facts are all agreed upon, they stand in lieu of a special verdict and no declarations of law are necessary. The court applies the law arising on such undisputed facts and renders the judgment of the law.

APPELLATE
and trial prac-
tice: agreed
statement:
instructions.

But the rule is otherwise where the parties agree to a certain state of facts while they controvert others which one or the other of the parties must introduce in evidence to support, in such case the agreed statement is used before the jury, or the court sitting as a jury, as evidence concluding the parties so far as they have agreed, but in that case the judgment will be upon the finding of facts and not upon an agreed case. *Ford v. City of Cameron*, 19 Mo. App. 467; *White v. Walker*, 22 Mo. 433; *Henri v. Grand Lodge*, 59 Mo. 581; *Shaw v. Padley*, 64 Mo. 519; *Munford v. Wilson*, 15 Mo. 540. In this case only a part of the facts were agreed upon. One or more material facts on which plaintiffs

relied to make out their *prima facie* case were controverted, so that they were compelled to introduce proof in support thereof. The verdict was not upon the "facts agreed" but "upon the finding of the facts."

When the cause is submitted to the court without the intervention of a jury the facts found by the court are incontrovertible here. It will be presumed on appeal that the court in such case entertained correct views of the law, and if there is substantial evidence to support the judgment, as we think was the case here, it will be affirmed. *Johnson v. Lullman*, 88 Mo. 566; *Gains v. Fender*, 82 Mo. 497; *Miller v. Breneke*, 83 Mo. 163; *Zervis v. Unnerstall*, 29 Mo. App. 474; *DeLaureal v. Kemper*, 9 Mo. App. 77.

The judgment of the circuit court will be affirmed.

### SEPARATE OPINION.

GILL, J.—I think this judgment ought to be affirmed. The rule is that a common carrier will not be permitted by the contract of shipment to release itself from the consequences of its own negligence. As an original proposition I should say that the effect of the defendant's contention here is to do that identical thing. It is not a *total* exemption, it is true, but a partial escape from the consequences of its own negligence that is attempted. However, the supreme court has said that it does not regard such partial limitation on the right of recovery as a contract exempting the carrier from the consequences of its own negligence, but seems to hold the shipper *estopped* from claiming more than the stipulated value of the property, on the ground that, having stated a reduced value in order to get a lower freight charge, he will not, when a loss occurs, be allowed to claim a greater value. Judge HOUGH in *Harvey v. Railroad*, 74 Mo. 538, says: "Such

a contract fairly entered into leaves the carrier responsible for its own negligence, and simply fixes the rate of freight and liquidates the damages. This we think it is competent for the carrier to do. And where the reduced value is voluntarily fixed by the shipper, with a view of obtaining a low rate of freight, without any knowledge on the part of the carrier that the property was of greater value, it would be a fraud upon the carrier to permit the shipper to recover a greater sum than fixed by him."

If, now, in the case at bar, the plaintiff or his agent had, when shipping the bull, secured a reduction of freight by falsely stating the animal to be of the value of $50 instead of $225, his true value, then it might, with some show of justice, be said that as he induced the agent to give him a lower rate by representing the animal to be worth no more than $50, then plaintiffs would be estopped to claim any greater sum. This was the *Harvey* case, *supra*. But the facts that go to make up estoppel in that case are wanting in this. It is true that in the printed matter of the bill of lading it is stated that the parties "agreed that the value of said live stock does not exceed the following valuation· Each ox or bull, $50; each cow, $30; each sheep, $3, etc.," and that the company should not be liable for loss or damage in excess of said declared valuation, etc. But the evidence clearly shows that there was not at the time of shipment, or at any other time, anything said about the value of the bull nor as to the rate of freight and hence that this recital in the bill of lading was false. The shipper was not asked to state its value, and of course there was no fixing a rate, based on such a representation. Defendant's counsel claim that this parol evidence as to what occurred at time of shipment was incompetent because tending to

——: contract:con-struction: value of stock.

contradict the writing. But the record fails to show that any objection was made or exception saved to this evidence. Hence the defendant can not now complain.

Neither did the shippers' agent suppose, or have right to suppose, that he was getting any reduced rate of freight for his principal. Indeed the face of the bill of lading can hardly be said to fix any rate. It says: "in consideration of tariff dollars per car," etc. The blank in which "tariff" was written was evidently intended to be filled with the number of dollars charged for the car; but the agent inadvertently or ignorantly filled it with the dubious word "tariff," intending perhaps the rate of freight to be fixed at the destination. If the carrier would shield itself under these alleged

*——:limiting liability: common law: construction.* special contracts—intended as a means of escape from its well known liability for negligence—it ought to see to it that such exemptions are made to appear in clear and unambiguous terms, so that it may be said the shipper had with open eyes fairly entered into it. "As the exception is an innovation on the principles of law and introduced exclusively for the benefit of the carrier, the construction must be made most strongly against him." *Levering v. Union Trans. & Ins. Co.*, 42 Mo. 92.

In view of the law as declared in *Harvey v. Railroad*, 74 Mo. 538; *McFadden v. Railroad*, 92 Mo. 343, and *Conover v. Pacific Express Co.*, 40 Mo. App. 31, the judgment of the circuit court is for the right party and ought to be affirmed.

ELLISON, J.—In this state it is well understood to be unquestioned law that a common carrier may, by contract with the shipper, limit his common law liability. He may do this, perhaps, in all the states of the union. It is also fully as well and clearly determined that when no fraud or deception intervenes, a

shipper who signs a contract of shipment makes it his contract just as in ordinary cases of contract and will be conclusively presumed to be acquainted with and to have assented to its terms. *O'Bryan v. Kinney*, 74 Mo. 125; *Railroad v. Cleary*, 77 Mo. 634; *Rice v. Railroad*, 63 Mo. 314. It is equally well settled that a stipulation in such contract exempting the carrier from liability for his negligence, though assented to by the shipper, will not be considered of any validity. This disability put upon the right of contract is based upon a motive of public policy which this and other jurisdictions have adopted.

The case at bar is not embarrassed by any suggestion of fraud in the execution of the contract or of unreasonableness in any of its provisions as to the rates of freight on different valuations therein mentioned. The question is, ought plaintiff to be allowed to recover more than $50 under the facts as to the execution and terms of the contract as set forth by Judge SMITH in his statement of facts. I think he should not; and I believe my opinion is not only founded upon authority, but upon the plainest principles of reason. It is not to be denied but that this contract provided for the shipment of a bull of the value of $50 at the tariff rate for a bull of that value. It is also quite as undeniable that the contract provided for an increase of the rate of freight charge on an increase of value of the animal, viz.: "An addition of twenty-five per cent will be made to the rate for each one hundred per cent, or fraction thereof, declared by the shipper to be the valuation of his live stock above the valuation set forth" in the contract. That is above the valuation of $50. There is also appearing in the body of the contract this statement, which is omitted by Judge SMITH from his statement of the facts, viz.: "When the

declared valuation is greater than that specified above, the agent will erase the printed valuation, insert the declared valuation and *charge accordingly*." (Italics mine).

Plaintiff therefore entered into a contract wherein he declared that his bull did not exceed the value of $50. He contracted for the tariff rate of freight for a bull of such value; and did so in the face of a provision saying that if he valued the bull higher than that sum he could do so, but must pay a higher rate of freight. He elected to ship at the lower valuation on the lower rate. It is common knowledge as well as simple justice that a carrier, whether by rail or otherwise, should receive compensation for the risk he assumes in the carriage. Ordinary business principles require that these risks be considered when rates of compensation for carriage are established. The greater the liability in case of loss, the greater is the risk and the greater should be the compensation. These matters are so clear and elementary as to scarcely require their statement.

It is likewise common knowledge drawn from experience in human conduct that more care will be bestowed upon property of great value than upon that of small value. A man is less careful of an animal valued at $50 than he would be of one worth $1,000. It is but justice that he should know the risk he assumes and the responsibility which rests upon him especially when the subject-matter of such risk and responsibility have been made the subject of contract. To allow the plaintiff in this case to put himself in the position that, if no loss occurs, he will only be liable to pay reasonable compensation for the transportation of a bull of the value of $50, and if a loss should occur he should be permitted to obtain damages on liability and responsibility commensurate with a bull of the value of $250, would be palpably unjust. I find the

position which I take on this question directly supported by the following authorities: *Hart v. Railroad*, 112 U. S. 331; *Coupland v. Railroad*, 61 Conn. 543; *Ballou v. Earle*, 17 R. I. 441; *Brehme v. Adams Express Co.*, 25 Md. 328; *Hill v. Railroad*, 144 Mass. 284; *Graves v. Railroad*, 137 Mass. 33; *Squire v. Railroad*, 98 Mass. 239; *Railroad v. Sherrod*, 84 Ala. 178; *Magnin v. Dinsmore*, 62 N. Y. 35; s. c., 70 N. Y. 410.

But it has been suggested that allowing a valuation fixed by contract to obtain when the loss has occurred from negligence, is tantamount to allowing a contract to exculpate the carrier for negligence. This suggestion finds support in some adjudications, though I believe them to be founded on a misapprehension of the effect of the contract. It is the contract fairly entered into which fixes and identifies the thing carried. and it establishes its value. There is no disability upon the parties preventing them from making such a contract. The shipper certainly ought not to complain of the valuation which he himself voluntarily puts upon his property. The contract as to the property to be shipped, its value, and the rate of compensation for shipment, are matters altogether apart from negligence. The carrier by such contract is not exempted from liability for negligence, for if the property is lost through his negligence he is liable for the full amount of that loss, as he and the shipper have fixed it and no contract of exemption for negligence will bar the shipper. The shipper will hold the carrier up to the full measure of the value as agreed upon. The question was presented to the supreme court of this state in *Harvey v. Railroad*, 74 Mo. 538, where the court said: "We do not regard a contract limiting a right of recovery to a sum expressly agreed upon by the parties as representing the true value of the property

shipped, as a contract in any degree exempting the carrier from the consequences of its own negligence." To the same effect is *Brown v. Railroad*, 18 Mo. App. 568. In discussing the question the supreme court of the United States in *Hart v. Railroad, supra*, said: "The limitation as to *value* has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing, and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

So in *Ballou v. Earle, supra*, the supreme court of Rhode Island quoted with emphatic approval the following from the case last mentioned, viz.: "There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight

and secure the carriage, if there is no loss; and the effect of disregarding the agreement, after a loss, is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract."

Again we have the same disposition of the question in *Coupland v. Railroad, supra,* where the supreme court of Connecticut says: "It is a rule established by some of the best authorities, and one which we recognize as expressing the law, that when a contract is fairly made between shipper and carrier agreeing on the valuation of the property carried, with the rate of the freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations of the property after a loss has occurred."

The case of *McFadden v. Railroad,* 92 Mo. 343, is not a case in point on the question here. The question there discussed was whether there was a consideration upon which to base the contract of valuation. And it was held that there was no consideration. The court, however, at page 352, recognize the rule which I have endeavored to maintain by saying in that case, that there was nothing to show "*any graduation of compensation to the valuation.*"

In my opinion the trial court erred in permitting a recovery of more than the contract valuation of the animals, and that the motion for rehearing should be sustained. The majority differ as to this, and deeming

the opinion in conflict with *Harvey v. Railroad,* 74 Mo. 538, and *McFadden v. Railroad,* 92 Mo. 343, the cause will be certified to the supreme court.

### ON MOTION FOR REHEARING.

SMITH, P. J.—It is contended that this is a case where the contract was fairly made, liquidating the damages if loss or injury occurred, and where it was founded upon a consideration consisting of an agreement for a lower rate of freight than would have been charged but for such special agreement. This contention no doubt results from a misconception of the terms of the contract. The contract recites that "in consideration of tariff dollars per car the said railroad company agrees to transport one car from Maryville to Kansas City," etc. It is thus seen that no rate of freight was fixed by the contract nor does it appear that the plaintiffs or their agent knew what rate was to be charged. It can not be presumed that the plaintiffs knew the tariff rate on defendant's road whatever that was between the point of shipment and that of consignment. How, then, can it be said that the minds of the contracting parties met and without which there could be no contract in that regard. How could both parties have assented to the same term at the same time when that term was known to one of them and unknown to the other? How could the plaintiff be held to assent to a special or other rate which was unknown to him and not even specified in the contract? In such case it was a mental impossibility for the minds of the contracting parties to have met on the same subject-matter. The consideration, upon which the alleged special agreement was based, was an essential element that was absent, and therefore such agreement can not be upheld. Lawson on Contracts, sec. 6; *Robinson v. Estes,* 51 Mo. App. 582. It

has been ruled in this state that a special contract exonerating a carrier from liability for negligence must be *assented to by the shipper in order to be binding on him.* *Levering v. Union Tran. Co.*, 42 Mo. 88.

Under the statutes of this state in relation to the classification and regulation of charges for freight it is made the duty of the railroad commissioners to see that schedule charges of railroads for carrying freight shall be reasonable and just. And it is made the duty of such commissioners to make out and deliver to each railroad carrier a schedule of reasonable rates for the carrying of the several classes of freight by it over its road. Such carriers are prohibited under heavy penalty from charging a greater rate of compensation for carrying freight than is authorized under its provisions. Arts. 2 and 3, chap. 42, R. S. The tariff rate is a duty imposed according to a schedule or table of charges generally. 6 Cent. Dict., Tariff, 6191. In this state railroad tariffs are fixed by the railroad commissioners and can not be arbitrarily deviated from by the carrier. If the defendant charged as the contract recites: "tariff" rates, this was the charge it was authorized to make in a case where its liability was not limited. *Bessell v. Railroad*, 25 N. Y. 442.

DEFINITIONS: tariff.

In some jurisdictions it is held that where there is shown an agreement to limit the liability of the carrier, it will be presumed in the absence of proof to the contrary that it was in consideration of a reduced compensation for the carriage but in this state the rule is, a contract must be founded upon a special agreement to which the shipper assented for a lower rate of freight than would be charged but for such special contract. *Rogan v. Railroad*, 51 Mo. App. 665; *Conover v. Express Co.*, 40 Mo. App. 31.

The blank in the contract was no doubt intended to be filled by the price to be charged in case of special contract limiting liability of the defendant instead of with the words "tariff dollars." These words I think imply no more than that defendant was to charge the plaintiff the usual customary tariff or schedule rate of shipping his animal. They do not imply that a special rate was charged. The schedule rate allowed by the railroad commissioner was the regular or general rate and hence not a special one.

It must inevitably follow from these observations that there was no agreement to carry the plaintiff's animal for a price different or less than that the defendant was authorized to charge in a case where its liability was not limited and therefore no consideration to support the contract limiting defendant's liability. According to any reasonable interpretation of the bill of lading, I think the defendant liable for the market value of the plaintiff's animal. I adhere to the conclusion expressed in the opinion.