J. N. KAUMANS, RESPONDENT, v. WESTERN UNION TELEGRAPH COMPANY, APPELLANT.

Kansas City Court of Appeals. May 25, 1925.

1.—Telegrams—Telegraph Company Held Entitled to Limit Its Liability For Failure to Transmit or Deliver Intrastate Telegram. In view of the provisions of sections 10410, 10550 and particularly sections 10495-10516, of the Public Service Commission Act, and similarity of provisions subjecting companies to regulation by Public Service Commission to provision of Intrastate Commerce Act, section 1, paragraph 3, as amended by Act of June 18, 1910, section 7, and sections 2 and 3 (U. S. Comp. St., sections 8563 and 8565), and similarity of rules as to classification of services and charging of rates corresponding to such classification, **held** that telegraph company is entitled to limit its liability for negligence, in failing to transmit or deliver intrastate telegram, by printed conditions on back of telegraph blank on which message was written.

2.—Appeal and Error—General Objection That Evidence is "Irrelevant, Incompetent and Immaterial" Held Insufficient to Save Exception to Ruling Admitting It. Objection to evidence on general charge that it is "irrelevant, incompetent and immaterial" is insufficient to save an exception on ruling admitting it.

*Corpus Juris-Cyc. References: Telegraphs and Telephones, 37Cyc, p. 1684, n. 6 New; p. 1685, n. 7.

Appeal from the Circuit Court of Jackson County.—Hon. Willard P. Hall, Judge.

REVERSED AND REMANDED.

*Brown Harris* for respondent.

*P. E. Reeder, S. J. McCulloch* and *Miller, Winger & Reeder* for appellant.

*Francis Raymond Stark,* of counsel.

ARNOLD, J.—This is an action to recover damages for negligent failure to deliver an intrastate telegraph message.

On September 23, 1920, at 8:30 A. M., plaintiff sent a telegram over defendant's lines from Montrose, Missouri, to Kansas City, Missouri, directing a grain company at the latter place to sell his 5000 bushels of wheat at $2.28 per bushel, but defendant negligently failed to deliver said message and thereby the grain company knew nothing of such order and did not sell said wheat until after it learned from plaintiff by other means that he had directed them to sell his wheat. By the time the sale was consummated the wheat market had fallen to a lower price, thereby entailing a loss to plaintiff of $737.50. This action to recover said loss is based upon defendant's negligent failure to deliver the message. The fee demanded was 40 cents which plaintiff paid at the time the message was presented for transmission and delivery.

The petition, after stating formal matters, alleges that "defendant and its operators, agents and servants negligently failed to transmit and deliver said message or dispatch to addressee and that by reason of the negligence of defendant, its operators, agents and servants aforesaid, this plaintiff was compelled to sell his said wheat for $2.13¼ per bushel, thereby suffering a loss and damage directly due to the negligence of defendant, its operators, agents and servants in the sum of $737.50." The prayer is for this amount.

The answer, after general denial, sets up several defenses, two of which are not involved in this appeal. Plaintiff filed demurrer to these two defenses which the court sustained. The trial proceeded on plaintiff's petition with the other defenses remaining in defendant's answer, to-wit, general denial and contributory negligence, to which plaintiff interposed a reply. Plaintiff offered evidence tending to support the cause of action pleaded in his petition. The defendant introduced no testimony but offered a demurrer to plaintiff's evidence which was overruled; and then offered certain instructions which embodied the items of defense above mentioned. These were

refused and the jury returned a verdict for the full amount prayed. After judgment thereon defendant appealed and now presents for our consideration the question of the validity of the two defenses above mentioned.

It is urged that if plaintiff is entitled to recover at all, his recovery is limited to 40 cents, the cost of the message, it having been sent under an alleged contract printed on the back thereof governing an "unrepeated" message, which limits recovery to the price received therefor. The remaining defense is that in any event, under said contract, defendant could not be held liable for any mistakes or nondelivery, whether caused by negligence or otherwise, beyond the sum of $50, at which amount said contract values the message, unless a greater value is stated in writing at the time the message is offered for transmission, and an additional sum paid equal to one-tenth of one per cent of such stated value.

The basis of the defenses being practically the same we may consider them as raising only one question, viz.; Can a telegraph company in the State of Missouri limit its liability for negligence, failure to transmit or deliver an intrastate telegram for which it has been paid, in the manner here indicated? The alleged contract referred to and relied upon in said defenses arose because, preceding the message which plaintiff wrote on the telegraph blank furnished by defendant for that purpose, the following words were printed: "Send the following message, subject to the terms on the back hereof which are hereby agreed to." This clause had reference to the following words printed on the back of said blank:

"To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, on consideration whereof it is agreed between the sender of the message and this Company, as follows:

"1. The Company shall not be held liable . . . for non-delivery, of any unrepeated message, beyond the amount received for sending the same; nor for non-delivery, of any repeated message, beyond fifty times the sum received for sending the same, unless specifically valued. . . .

"2. In any event the Company shall not be liable for damages for . . . the non-delivery of this message, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this message is hereby valued unless a greater value is stated in writing hereon at the time the message is offered to the Company for transmission and an additional sum paid or agreed

to be paid based on such value equal to one-tenth of one per cent, thereof.''

The theory upon which defendant bases its contention that one or the other of the provisions on the back of said telegram applies to, and controls, the amount of plaintiff's recovery seems to be that since this State has enacted its ''Public Service Commission'' law (Chap. 95, R. S. 1919), and particularly article 5 thereof, which places telegraph companies, insofar as intrastate telegraphic communication is concerned, under the regulating control and charge of that commission, the rule of decision in this State as to the validity and effect of such provisions on the back of intrastate telegrams must now be the same as the Federal rule on that subject applying to interstate telegrams, because of the similarity between the provisions in the State Public Service Commission Act and those of the Interstate Commerce Act and the amendments thereto. In other words, defendant's theory is that the basis and reason for the allowance of a classification of services and the charging of rates corresponding to such classification, in the very nature of things, make the provisions on the back of the telegram an integral part of the rates established, and since the rates cannot be changed except by order of the Public Service Commission, and must be uniform, such provisions must be given effect.

Paragraph 3, section 1, of the Interstate Commerce Act, as amended (36 U. S. Statutes at Large, p. 545), requires all charges for the transmission of telegrams to be just and reasonable and forbids, and makes unlawful, any unjust and unreasonable charge therefor; and paragraph 1 of section 10496, Revised Statutes 1919, of our State Act likewise provides that such charges shall be just and reasonable and not more than allowed by law or an order of the Commission, and every unjust or unreasonable charge, or any charge in excess of that allowed by law or order of the Commission, is made unlawful.

It is also true that section 2 of the Interstate Commerce Act, as amended (24 U. S. Stat. at Large, 379), forbids every unjust discrimination, and requires that the rates for the same class be uniform; and similar provisions are contained in paragraph 2 of section 10496 of our State Act.

Also paragraph 1 of section 3 of the Interstate Commerce Act as amended (24 U. S. Stat. at Large, p. 380), forbids any undue preferences being given, and paragraph 3 of section 1, Interstate Commerce Act, as amended (36 U. S. Stat. at Large, 545), authorizes telegraph messages to be classified into ''day,'' ''night,'' ''repeated,'' and ''unrepeated'' messages, and permits different rates to be charged for the different classifications. These two provisions are, in substance, incorporated in paragraph 3, section 10496 of our State Act.

Intrastate telegraph companies are subject to the provisions of the Public Service Commission Act, sections 10496 to 10515, Revised Statutes 1919. Under section 10497, a telegraph company is required to print and file with the public service commission "schedules showing the rates, rentals and charges for service of each and every kind," and such schedules are required to "state separately all charges and all privileges or facilities granted or allowed and any rules or regulations or forms of contract which may in any wise change, affect or determine any or the aggregate of the rates, rentals or charges for the service rendered."

In the case at bar defendant pleaded in its answer that it had filed with the public service commission "its tariff book containing the rates, classifications and charges for service and classifications established by the defendant," and that the Commission, prior to this suit had full knowledge of the rates, charges and classifications, and had approved the same. Hence the demurrer admits the truth of these allegations to the extent, at least, of its terms.

Paragraph 2, section 10497, Revised Statutes 1919, provides that no telegraph company "shall charge, demand, collect or receive a different compensation for any service rendered or to be rendered than the charge applicable to such service as specified in its schedule on file and in effect at that time." Nor shall it make any refund on the rate charged, nor extend to anyone "any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are specified in its schedule filed and in effect at the time and regularly and uniformly extended to all persons and corporations under like circumstances for a like or substantially similar service." And said section (10497), by its terms, contemplates that no change in the rates, charges or rentals thus filed and approved shall continue in force until changed by the company with the consent of the commission, or by the commission itself after a hearing on complaint authorized by section 10502, which provides for a hearing as to whether the rates, charges or rentals, or the rules, regulations or practices affecting such rates, charges, rentals or services, are unjust, unreasonable, discriminatory or unduly preferential.

We think the issues in this case are determined in State ex rel. Western Union Tel. Co. v. Public Service Commission, 264 S. W. 669, which is the latest utterance of our Supreme Court on the subject. It should be remembered that the message over which this controversy arose was received for transmission and delivery under the contract provisions limiting recovery which had been on file with the Public Service Commission long prior thereto, and which continued in force until July 18, 1921, when the provisions now in force were filed. The former contract limited recovery in case of an unrepeated message to the sum paid for its transmission, or in case of a repeated

message, not beyond fifty times the toll paid, unless the message was specially valued; nor in any event beyond the sum of fifty dollars (at which amount the message was valued) unless a greater value was stated upon the message. Under the new contract filed as aforesaid, the corresponding maximum amounts recoverable are respectively $500 and $5000, with an agreed value of $5000 unless a greater value is designated on the message.

The case above referred to, to-wit, State ex rel. W. U. T. Co. v. Pub. Ser. Com., 264 S. W. 669, had its origin in a proceeding before the Commission entitled Kaumans, Complainant, v. W. U. Tel. Co., filed December 16, 1921, and styled "Complaint of attempt to limit liability on intrastate business." It seems that the purpose of the proceeding was to obtain an order from the commission enjoining the telegraph company from printing on its message blanks used in intrastate transactions any limitation whatever upon its liability. The prayer of the complaint filed with the Commission was that the "Western Union Telegraph Company be ordered to furnish to its patrons in the State of Missouri such contracts only as will fully advise its patrons that upon purely intrastate business there is no limitation of liability for negligence."

The report and order of the Commission are published in 13 P. S. C. Rep. 225, 239, and the order insofar as it is pertinent to the question under consideration is as follows:    (l. c. 238-239.)

"That the Western Union Telegraph Company shall on and after the 2d day of July, 1923, cease and desist from delivering, distributing or furnishing to its patrons in the State of Missouri, for use in handling messages wholly within the State of Missouri, telegraph blanks or forms which contain any statement to the effect that said defendant has any or claims the right to limit its liability for mistakes or delays by it in handling telegraphic messages wholly within the State of Missouri."

An appeal was taken to the circuit court of Cole county and the order of the Commission was there affirmed. On appeal to the Supreme Court, the judgment of the circuit court was reversed and the order of affirmance set aside. The grounds upon which the order of the Commission is based may best be stated in the words of the Supreme Court (264 S. W. l. c. 671), as follows:

"As shown by the finding and report of the Commission, its order rests upon these conclusions: Under the laws of this State the company cannot limit its liability for negligence by contract; the statements just referred to which it indorses on its message blanks purport to effect such a limitation and are therefore unwarranted; and such unwarranted statements not only mislead but may be used by the company to coerce unjust settlements of valid claims against it."

220 Mo. App.—61.

As the opinion in that case must be and is controlling here, we have carefully reviewed it and find therein the following points decided which are determinative of the issues herein:

(a)   While a contract of a common carrier for exemption from liability for negligence is void, yet the basing of rates in part on the liability involved is not a limitation of liability, but a mere determination in advance of the maximum amount thereof, a liquidation of the damages, as in effect it was held in Harvey v. Railroad Co., 74 Mo. 538; McFadden v. Ry. Co., 92 Mo. 343; Kellerman v. Railroad Co., 136 Mo. 177; George v. Railroad Co., 214 Mo. 551.

(b)   The right of a carrier to adjust the rate to the valuation, which the shipper places upon the thing to be transported, is the basis upon which a limitation of liability in case of loss or damage is founded.

(c)   That telegraph companies may graduate their rates by the liability assumed, is necessarily implied in the rate-making power conferred upon them.

(d)   The difficulty of appraising the value of a message when it is offered for transmission does not defeat the right of a telegraph company to make a charge for the service sought in proportion to the risk to be incurred, and the sender is in a better position than the company to know approximately the value of the thing sent and the damages that may flow from a failure to accurately transmit or promptly deliver.

(e)   While the Public Service Commission may determine what rates and charges are just and reasonable, yet under the Public Service Commission Act, until it does so the rates and charges when filed with the Commission become, and, until changed by the filing of a new schedule, or by order of the Commission, continue to be the only lawful rates and charges, binding upon both the corporation filing them and the persons who avail themselves of its services.

(f)   The schedule of rates and charges filed by the company, based upon the classification of repeated, unrepeated and special value messages, which in effect graduates its basic rate by the liability assumed, have not been found by the Commission to be unjust, unreasonable or unlawful.   They are, therefore, lawful rates, and it follows that the limitations of liability upon which they are based are also lawful as inherent parts of the rates themselves.

(g)   In view of the provisions of the Public Service Commission Act, the case of Reed v. Western Union Telegraph Co., 135 Mo. 661, is without influence in the determination of the question presented by the record.   Those provisions have superseded the law as declared in that case.

(h)   Telegraph corporations in this State, under section 10496, subdivision 3, Revised Statutes 1919, may classify intrastate mes-

sages for rate purposes into repeated, unrepeated, valued and other classes, with the assumption of a different liability for each class, subject to the provisions of the Public Service Commission Act.

(i)   There is nothing in section 10136, 10140 or 10498, Revised Statutes 1919, repugnant to the right of the telegraph companies to graduate their rates by the liability assumed.

(j)   The basing of rates and charges for the sending of telegraphic messages in part on the liability assumed as permitted by the Public Service Commission Law, operates equitably for both the companies and the persons who avail themselves of their services.

We think the foregoing is determinative of the issues herein and that the verdict of the jury was contrary to the law applicable to the facts. We find no reversible error can be based upon the admission in evidence of the letter marked ''Exhibit D'' since there was no valid objection thereto. The rule is well settled that an objection to evidence on the general charge that it is ''irrelevant, incompetent and immaterial'' is insufficient to save an exception on the ruling admitting it. [State ex rel. v. Diemer, 255 Mo. 336, and cases therein cited.]

For reasons above stated the judgment is reversed and the cause remanded for a retrial in accordance with this opinion. *Bland, J.,* concurs; *Trimble, P. J.,* absent.